[Nos. 45996-5-II; 46113-7-II.   Division Two.   March 1, 2016.]

THE STATE OF WASHINGTON, *Respondent*, v. EUGENE A. YOUNG, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. CLAUDE A. HUTCHINSON, *Appellant*.

*Stephanie C. Cunningham*, for appellant Young.

*Catherine E. Glinski* (of *Glinski Law Firm PLLC*), for appellant Hutchinson.

*Mark E. Lindquist, Prosecuting Attorney*, and *James S. Schacht, Deputy*, for respondent.

¶1    B<small>JORGEN</small>, A.C.J. — Eugene Young and Claude Hutchinson appeal their convictions for second degree rape,

promoting commercial sexual abuse of a minor, communication with a minor for immoral purposes, and second degree attempted theft.

¶2 Young argues that (1) the trial court abused its discretion in ruling that there was sufficient evidence to support authenticating text messages from "Y.G." and "Papi," and that without those messages, there is insufficient evidence to support his conviction of communicating with a minor for immoral purposes. Hutchinson argues that (2) there is insufficient evidence to support his conviction of communicating with a minor for immoral purposes and (3) the prosecutor improperly impugned the integrity of his defense counsel when he asked a witness about whether his defense counsel was present at a pretrial interview. Both Young and Hutchinson (4) argue that the prosecutor misstated the law on accomplice liability during closing argument, which amounted to prosecutorial misconduct, and (5) raise additional arguments in their statements of additional grounds.

¶3 In the published portion of this opinion, we hold that the trial court reasonably exercised its discretion in ruling there was sufficient evidence to permit a reasonable juror to find that the text messages were authenticated or identified as from Young. In the unpublished portion, we address and reject Young's remaining arguments and Hutchinson's arguments. Accordingly, we affirm Young's and Hutchinson's convictions.

## FACTS RELATING TO TEXT MESSAGES

¶4 In 2012, Young and Hutchinson promoted and directed two young women, N.H. and 16-year-old C.B.,[1] in prostitution activities. To facilitate her prostitution, C.B.

---

[1] "[I]n all opinions . . . in sex crime cases, [we] shall use initials . . . in place of the names of all witnesses known to have been under the age of 18 at the time of any event in the case." Gen. Order 2011-1 of Division II, *In re the Use of Initials or Pseudonyms for Child Witnesses in Sex Crime Cases*, http://www.courts.wa.gov /appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber=2011-1&div=II.

communicated with Young through telephone calls and text messages. C.B. named the contact information for Young in her phone as "Papi." Report of Proceedings (RP) at 317-20.

¶5 Young and Hutchinson also forced 16-year-old R.E. to participate in a fraudulent check transaction for them. When the check transaction involving R.E. was concluded, Young put the contact name "Y.G." into R.E.'s cell phone. RP at 874. Later, Y.G. texted R.E., asking if she would be interested in prostitution. Y.G. was unsuccessful in persuading R.E. into prostitution, but the two continued to communicate about how she could get her money back after the fraudulent check transaction. *Id.*

¶6 The State subsequently charged both Young and Hutchinson with second degree rape, promoting commercial sexual abuse of a minor, first degree robbery, first degree kidnapping, and communication with a minor for immoral purposes. At trial, evidence was introduced describing these features of the text messages. The jury returned verdicts finding both Young and Hutchinson guilty of second degree rape,[2] promoting commercial sexual abuse of a minor,[3] communication with a minor for immoral purposes,[4] and second degree attempted theft.[5] Young and Hutchinson appeal their convictions.

## ANALYSIS

¶7 Young argues that the trial court abused its discretion when it determined that the State had presented sufficient evidence to authenticate that texts from Papi to C.B. and from Y.G. to R.E. were from Young. This argument

---

[2] RCW 9A.44.050.

[3] Former RCW 9.68A.101 (2010) was amended in 2012 and 2013. These amendments do not affect the issues in this matter.

[4] Former RCW 9.68A.090 (2006) was amended in 2013. This amendment does not affect the issues in this matter.

[5] Former RCW 9A.56.040 (2009) was amended in 2012 and 2013. These amendments do not affect the issues in this matter.

fails because R.E. and C.B. both had personal knowledge that these contacts were Young and the contents of the text messages corroborate their interactions with him. Accordingly, the trial court reasonably exercised its discretion when it admitted the text messages.

## I. STANDARD OF REVIEW AND LEGAL PRINCIPLES

¶8 We review a trial court's admission of evidence for an abuse of discretion. *State v. Bradford*, 175 Wn. App. 912, 927, 308 P.3d 736 (2013), *review denied*, 179 Wn.2d 1010 (2014). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *Id.*

¶9 "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." ER 901(a). In *State v. Bashaw*, 169 Wn.2d 133, 140-41, 234 P.3d 195 (2010) (quoting *State v. Payne*, 117 Wn. App. 99, 106, 69 P.3d 889 (2003)), *overruled on other grounds by State v. Guzman Nuñez*, 174 Wn.2d 707, 285 P.3d 21 (2012),[6] the Supreme Court held that to meet this requirement

> [t]he party offering the evidence must make a prima facie showing consisting of proof that is sufficient "to permit a reasonable juror to find in favor of authenticity or identification."

" '[T]he proponent of offered evidence need not rule out all possibilities inconsistent with authenticity or conclusively prove that evidence is what it purports to be.' " *In re Det. of H.N.*, 188 Wn. App. 744, 751, 355 P.3d 294 (2015) (alteration in original) (quoting *State v. Andrews*, 172 Wn. App. 703, 708, 293 P.3d 1203 (2013)).

¶10 " 'Because under ER 104 authenticity is a preliminary determination, the court may consider evi-

---

[6] The *Nuñez* court expressly noted that it was not overruling *Bashaw*'s authenticity holding. *Nuñez*, 174 Wn.2d at 709 n.1.

dence that might otherwise be objectionable under other rules.' " *Id.* (quoting *Rice v. Offshore Sys., Inc.*, 167 Wn. App. 77, 86, 272 P.3d 865 (2012)). " 'A trial court may, therefore, rely upon such information as lay opinions, hearsay, or the proffered evidence itself in making its determination.' " *Id.* (quoting *State v. Williams*, 136 Wn. App. 486, 500, 150 P.3d 111 (2007)). " 'Such information must be reliable, but need not be admissible.' " *Id.* (quoting *Williams*, 136 Wn. App. at 500). The Rules of Evidence provide a number of illustrative examples that demonstrate methods of authentication, including testimony of a witness with knowledge, ER 901(b)(1), and the contents of a message. *See* ER 901(b)(10)(iii). " 'Once a prima facie showing has been made, the evidence is admissible under ER 901.' " *H.N.*, 188 Wn. App. at 751-52 (quoting *Rice*, 167 Wn. App. at 86).

¶11 Both parties rely on *Bradford* from Division One of our court. In *Bradford*, the court found under ER 901(a) that there was sufficient evidence introduced at trial to support a finding that text messages were what the State contended they were: text messages written and sent by Bradford. 175 Wn. App. at 928-29. The *Bradford* court drew on several pieces of evidence that supported authentication of the text messages, including evidence showing that (1) Bradford's text messages were consistent with his desperate desire to communicate with the victim, (2) the content of the texts in tandem with Bradford's corroborating behavior demonstrated that he was the one who sent them, (3) the timing of the texts was consistent, since the victim only received texts when Bradford was out of jail and did not receive texts when he was in jail, and (4) the victim and another witness testified that they believed the text messages were from Bradford. *Id.* at 929-30.

¶12 After *Bradford* was decided, ER 901(b) was amended to add a specific section illustrating some methods for authenticating e-mail:

Testimony by a person with knowledge that (i) the e-mail purports to be authored or created by the particular sender or

the sender's agent; (ii) the e-mail purports to be sent from an e-mail address associated with the particular sender or the sender's agent; and (iii) the appearance, contents, substance, internal patterns, or other distinctive characteristics of the e-mail, taken in conjunction with the circumstances, are sufficient to support a finding that the e-mail in question is what the proponent claims.

ER 901(b)(10).[7]

¶13 When Division One of our court examined the admissibility of text messages again in *H.N.*, it relied on ER 901(b)(10) by analogy. 188 Wn. App. at 759. In *H.N.*, the trial court allowed the State's expert medical witness to read into the record a set of e-mailed screen shots of text messages used as part of her opinion testimony to support the State's case in committing H.N. to involuntary treatment. *Id.* at 755-57. The trial court also allowed the screenshots of the text messages to be admitted as substantive evidence. *Id.* at 757. The *H.N.* court found this to be a proper exercise of the trial court's discretion in admitting the evidence for five reasons: (1) H.N. had admitted to the expert witness that she had sent the text messages, (2) identifying information, including her phone number and full name, was displayed on the top of the text messages, (3) the contents of the text messages suggested H.N. was the sender, (4) the text messages were consistent with certain events that happened in H.N.'s life, and (5) the timing of the text messages was consistent with H.N.'s hospitalization on the night of the incident. *Id.* at 758-59.

## II. Texts from Y.G. to R.E.

■ ¶14 Turning to the present appeal, we hold that similar to *Bradford* and *H.N.*, sufficient proof supported the trial court's ruling that the text messages from Y.G. to

---

[7] The trial court's rulings on the authenticity of the text messages occurred on December 10, 2013 or afterward. The effective date of amendment for ER 901(b)(10) was December 10, 2013.

R.E. were what they purported to be: text messages from Young to R.E. First, R.E. had personal knowledge that the sender of the text messages was Young. R.E. testified that after Young used her phone to call someone, he put his number in her phone. R.E. also testified that Young had put "Y.G." as the contact name under that phone number. She further testified that the text messages she received from Y.G. were from the same number that Young had put in her phone.

¶15 Second, the content of some of the texts supports a finding that the texts in question are from Young. R.E. testified that Young forced her to participate in a fraudulent check transaction. Some of the texts corroborate this testimony, as R.E. texted with Y.G. that she wanted some of her money back and Y.G. was agreeable. The text messages also show that Y.G. was interested in getting R.E. to engage in prostitution. Consistently, with *Bradford* and *H.N.*, R.E.'s personal knowledge, in tandem with the contents of the texts, is sufficient evidence to permit a reasonable trier of fact to find that Young was the one texting R.E.

¶16 Although it is true, as Young argues, that there is evidence showing that Hutchinson or some other person wrote the texts from Y.G., the trial court "considers only the evidence offered by the proponent and disregards any contrary evidence offered by the opponent" in determining whether evidence has been authenticated. *Rice*, 167 Wn. App. at 86. Young was free to bring up any contrary evidence, but this goes to weight, not admissibility. *State v. Tatum*, 58 Wn.2d 73, 76, 360 P.2d 754 (1961). For these reasons, the trial court did not abuse its discretion when it admitted the text messages under ER 901.

### III. Texts from Papi to C.B.

¶17 Similarly, Young contends that the text messages from Papi to C.B. were not properly authenticated. However, the record here also shows that the trial court did not

err in ruling that Young was the one texting C.B. through the contact, Papi.

¶18 C.B. testified that she put Young's name and number into her phone, reflecting her personal knowledge that this person was Young. C.B. testified that she continued receiving text messages from Young and renamed him "Papi" in her phone. RP at 319-20. The subject matter of the text messages is consistent with C.B.'s testimony that she and Young worked together in prostitution. C.B.'s personal knowledge in tandem with the subject matter of the texts is sufficient evidence for a reasonable trier of fact to find that these texts came from Young. Accordingly, we hold the trial court did not abuse its discretion in admitting these text messages.

## CONCLUSION

¶19 The text messages at issue were properly authenticated under ER 901(a), and the trial court did not abuse its discretion in admitting them.

¶20 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

MAXA and LEE, JJ., concur.

Review denied at 185 Wn.2d 1042 (2016).