# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  47725-4-II |
| Respondent, | |
| v. | |
| KYLE DAVID LIPINSKI, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Kyle D. Lipinski appeals his convictions for two counts of felony violation of a no-contact order, arguing that the trial court abused its discretion when it ordered him to wear a leg brace restraint during his trial and when it admitted text messages sent to Aubrey Boyes because the State did not properly authenticate the text messages.  We hold that the trial court did not abuse its discretion and we affirm Lipinski's convictions.

## FACTS

On June 5, 2014, a no-contact order was entered, which prohibited Lipinski from contacting Boyes "in person" or by "electronic means."  VRP (June 8, 2015) at 80-81; Ex. 1.  The no-contact order also prohibited Lipinski from coming within 500 feet of Boyes's residence.  Boyes alleged that Lipinski came to her house on December 1 at 9:30 p.m., and knocked and rang the doorbell.  Ryan Waslawski, who was living with Boyes at the time, recognized Lipinski as the person standing outside the house.  Boyes also alleged that on December 6, she received text messages on her cell phone from an unknown phone number, but that she knew they were from

Lipinski "[b]y the way he talked to [her]." VRP (June 8, 2015) at 52. On December 17, Lipinski

was charged with two counts of felony violations of the no-contact order.[1]

### I. LEG BRACE RESTRAINT

On June 8, 2015, the morning of trial, the State moved to allow the use of a leg brace

restraint on Lipinski during the trial. At the hearing, a corrections deputy testified that the leg

brace restraint allows a defendant to "[walk] normally," but "as soon as you try to run or kick, it

will lock in a straight position," and that it was the least restrictive device other than not using a

restraint device at all. VRP (June 8, 2015) at 9-10. The corrections deputy also testified that only

one deputy is required in the courtroom when the leg brace restraint is used and that two deputies

would be required if the leg brace restraint is not used. The State argued that the leg brace restraint

was appropriate to help the deputies keep Lipinski under control in the courtroom because he had

previously had bail revoked twice and had failed a urinalysis test. Lipinski argued that he had not

shown any "aggressive or threatening behavior that would lead the Court to fear that kind of

behavior from [him] at the trial." VRP (June 8, 2015) at 14.

The trial court found that the physical characteristics of the courtroom, particularly its small

size, and the defendant's age and physical attributes, justified restraining Lipinski during the trial.

The trial court ordered that Lipinski wear the leg brace restraint. The trial court also stated that

because Lipinski was sitting on the opposite side of defense counsel, it would be more difficult for

the jury to see the leg brace restraint. In response to the trial court's statement that "the bottom

cuff appear[ed] to be visible under the pant leg and the sock [was] not over the top of [the leg brace

---

[1] Count I relates to events on December 1, 2014, and Count II relates to the text messages allegedly
sent by Lipinski to Boyes on December 6.

restraint]," corrections officers put an additional sock over the leg brace restraint before the jury entered the courtroom so that the restraint would not be visible. VRP (June 8, 2015) at 16, 24.

## II. ADMISSION OF TEXT MESSAGES

During the trial, Boyes testified that she received text messages on December 6, 2014, from Lipinski. Boyes testified that the messages were sent from a phone number that she did not recognize, but that it was not unusual for Lipinski to use a new phone number, and that she knew the text messages were from him "[b]y the way he talked to [her]." VRP (June 8, 2015) at 52.

The State moved to introduce evidence of the text messages. Lipinski objected[2] and argued that the text messages were not properly authenticated under ER 901(a). Outside the presence of the jury, the trial court allowed the State to establish a foundation to admit the text messages:

[STATE]: And, Ms. Boyes, looking at those messages, what about the content made you believe that those messages came from Mr. Lipinski?

[BOYES]: Because I was called "Snowflake." He said that--it said that there was "someone who loved me more than sugar in a baby food jar," which once Mr. Lipinski gave me a baby food jar full of sugar and told me he loved me more than that, and it was signed "PS," and we used to have on our bedroom wall, "PS, I love you," and he would sign everything "PS" to me during our relationship.

[STATE]: Was there anything else in the content of those messages that made you believe it came from Mr. Lipinski?

[BOYES]: He said that I may be scared, and it doesn't mean I'm in danger. Everything is going to work out, and that I may hate him, but he will love me.

[STATE]: And prior to receiving text messages, had you ever talked to Mr. Lipinski about those kind of issues, the fact that you were afraid?

[BOYES]: Yes.

---

[2] Lipinski also objected that the text messages were hearsay. Lipinski does not raise this argument on appeal; thus, we do not address it. RAP 10.3(a)(4).

No. 47725-4-II

> [STATE]: And had you had previous responses from Mr. Lipinski that were similar to that text message?
>
> [BOYES]: Yes.

VRP (June 8, 2015) at 58-59.

Lipinski argued that Boyes's speculation was not enough to properly authenticate the text messages because there was no additional corroborating evidence and the State could not identify the phone number as Lipinski's. Over Lipinski's objection, the court admitted the text messages:

> [THE COURT]: I am going to make the decision within my discretion that the level of detail and the uniqueness of the detail given by the witness regarding the statements is sufficient [to admit the text messages].
>
> Then the challenge that the defense has raised would certainly go to the weight of the authenticity of the document, not its admissibility, and certainly defense is not foreclosed from arguing the lack of identifying number challenges the evidence's application to the defendant, but that is an issue for the jury, not for its admissibility.

VRP (June 8, 2015) at 65.

The jury found Lipinski guilty of both charges and, found by special verdict as to each crime, that he and Boyes were family or household members. The trial court sentenced Lipinski to 27 months confinement and ordered that the sentences run concurrently. Lipinski appeals.

ANALYSIS

I. LEG BRACE RESTRAINT

Lipinski argues that the trial court abused its discretion when it ordered him to wear a leg brace restraint during trial. We disagree.

4

A. LEGAL PRINCIPLES

A criminal defendant has a right to appear at trial without physical restraint, except in extraordinary circumstances. *State v. Jennings*, 111 Wn. App. 54, 61, 44 P.3d 1 (2002). Restraint is disfavored because it may impact the constitutional right to the presumption of innocence as well as the right to testify on one's own behalf and the right to confer with counsel during trial. *State v. Damon*, 144 Wn.2d 686, 691, 25 P.3d 418 (2001). A restraint should only be ordered for three purposes: "'when necessary to prevent injury to those in the courtroom, to prevent disorderly conduct at trial, or to prevent an escape.'" *State v. Finch*, 137 Wn.2d 792, 846, 975 P.2d 967 (1999) (quoting *State v. Hartzog*, 96 Wn.2d 383, 398, 635 P.2d 694 (1981)).

"'A trial judge must exercise discretion in determining the extent to which courtroom security measures are necessary to maintain order and prevent injury.'" *Finch*, 137 Wn.2d at 846 (quoting *Hartzog*, 96 Wn.2d at 400). A trial court's decision "'must be founded upon a factual basis set forth in the record.'" *Finch*, 137 Wn.2d at 846 (quoting *Hartzog*, 96 Wn.2d at 400). We review a trial court's decision to order a defendant to wear a restraint during trial for abuse of discretion. *Finch*, 137 Wn.2d at 846.

Because a defendant has a federal and state constitutional right to appear free from restraints, a violation of that right is presumed prejudicial unless the State proves that the error is harmless beyond a reasonable doubt. *Damon*, 144 Wn.2d at 692. The State has the burden of showing that the restraint did not influence the jury's verdict. *Damon*, 144 Wn.2d at 692. "A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error." *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985).

B.    LEG BRACE RESTRAINT

Here, the trial court ordered that defendant wear a leg restraint given (1) the seriousness of Lipinski's no-contact order violation charge; (2) the fact that the current felony charges was a probation violation and resulted in his bail being revoked; (3) Lipinski's previous failure to provide a urinalysis test, his youthful age and able-bodied physical attributes; and (4) the physical size and layout of the small courtroom.  The trial court also ordered a restraint because (5) it found that if Lipinski did not wear a restraint at trial, that one additional correctional officer would be required in the courtroom.

Lipinski contends that the jury may have seen the restraint.  However, the trial court took precautions to ensure that the restraint was not visible to the jury during the trial.  And there is no evidence in the record that the jury saw the restraint during trial.  We hold that the court did not abuse its discretion when it ordered that Lipinski wear a leg brace restraint during the trial.

II.    ADMISSIBILITY OF TEXT MESSAGES

Lipinski argues that the court abused its discretion by admitting the December 6, 2014, text messages because they were not properly authenticated.  We disagree.

A.    LEGAL PRINCIPLES

We review a trial court's admission of evidence for an abuse of discretion.  *State v. Young*, 192 Wn. App. 850, 854, 369 P.3d 205 (2016), *review denied*, 185 Wn.2d 1042 (citing *State v. Bradford*, 175 Wn. App. 912, 927, 308 P.3d 736 (2013)).  An abuse of discretion occurs when a trial court's decision is manifestly unreasonable or based upon untenable grounds.  *Young*, 192 Wn. App. 854.

"The requirement of authentication . . . as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." ER 901(a). "[The] contents, substance, internal patterns, or other distinctive characteristics of [an] e-mail, taken in conjunction with the circumstances, are sufficient to support a finding that the e-mail in question is what the proponent claims." ER 901(b)(10).[3] Testimony by a witness with knowledge is sufficient for authentication. ER 901(b)(1). "'Once a prima facie showing has been made, the evidence is admissible under ER 901.'" *Young*, 192 Wn. App. at 855 (internal quotation marks omitted) (quoting *In re Det. of H.N.*, 188 Wn. App. 744, 751-52, 355 P.3d 294 (2015), *review denied*, 185 Wn.2d 1005 (2016)). Because authenticity is a preliminary determination, a trial court may consider otherwise objectionable evidence. *Young*, 192 Wn. App. at 854-55. Challenges to authenticity go to weight, not admissibility. *Young*, 192 Wn. App. at 857.

In *Young*, we held that the recipient's personal knowledge of the sender's phone number and the contents of the texts were sufficient evidence to permit a reasonable trier of fact to find that the defendant was the sender of the text messages. 192 Wn. App. at 857. The recipient of the text messages in *Young* had personal knowledge of the defendant's phone number because it was listed as a contact in the phone, and the content of the text messages corroborated the recipient's testimony describing the defendant's conduct. *Young*, 192 Wn. App. at 857.

---

[3] ER 901 was amended effective December 10, 2013, to illustrate methods for authenticating e-mails, which by extension applies to text messages. *See Young*, 192 Wn. App. 856 (citing *In re Det. of H.N.*, 188 Wn. App. 744, 759, 355 P.3d 294 (2015), *review denied*, 185 Wn.2d 1005 (2016)).

B.     ADMISSION OF TEXT MESSAGES

Boyes testified that Lipinski did not always communicate from the same phone number but she also testified that she knew that it was him based on "the way he talked to [her]." VRP (Jun. 8, 2015) at 52. Boyes testified that the sender called her "Snowflake" and that Lipinski called her "Snowflake." VRP (Jun. 8, 2015) at 58-59. Boyes also testified that the text messages were from "someone who loved [her] more than sugar in a baby food jar," and that Lipinski had previously given her "a baby food jar full of sugar and told [her] he loved [her] more than that." VRP (Jun. 8, 2015) at 58. Boyes further testified that the text message was signed "PS," and that Lipinski "would sign everything 'PS' to [her] during [their] relationship." VRP (Jun. 8, 2015) at 58. Finally, Boyes testified that the messages stated that "[she] may be scared, and it [didn't mean] [she was] in danger" and "[she] may hate him, but he will love [her]," and that Lipinski had previously sent similar text messages to her. VRP (Jun. 8, 2015) at 58.

Like the text messages in *Young*, the content of the text messages here corroborated Boyes's testimony about Lipinski's conduct. Although Boyes did not have personal knowledge of the phone number, she testified that it was not unusual for Lipinski to contact her through an unknown phone number, that he had previously signed messages in the same manner, and that he had sent similar text messages to her in the past stating that she "[was not] in danger" and "he will love [her]." VRP (Jun. 8, 2015) at 58. Thus, we hold that the court did not abuse its discretion when it admitted the text messages under ER 901.

No. 47725-4-II

We affirm Lipinski's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

LEE, P.J.

MELNICK, J.