# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48713-6-II |
| Respondent, | |
| v. | |
| WALLACE PRUITT, III, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Wallace Pruitt, III, was convicted of one count of second degree assault, two counts of unlawful possession of a firearm, three counts of tampering with a witness, and nine counts of violation of a protection order. Pruitt appeals his conviction for one count of assault in the second degree and the convictions for nine counts of violation of a protection order. Pruitt argues that the trial court erred by admitting the victim's hearsay statements as excited utterances. He also argues that there was insufficient evidence to support the jury's verdicts on the violations of a protection order. In a statement of additional grounds (SAG),[1] Pruitt argues that the State improperly cross-examined him during his sentencing allocution, he received ineffective assistance of counsel, and the trial court erred by admitting several items of evidence. We affirm.[2]

---

[1] RAP 10.10.

[2] Pruitt also requests that we decline to impose appellate costs. If the State files a cost bill, Pruitt may challenge the imposition of costs under RAP 14.2. Therefore, we decline to address this issue any further.

FACTS

Carol Spearance began a relationship with Pruitt shortly after her divorce from Anthony Curry. On April 11, 2015, Spearance had been drinking heavily, although Pruitt was not. Spearance suggested that she and Pruitt engage in a threesome with her friend Tammie. Pruitt agreed. After Tammie arrived at their home, the three of them decided to go to a bar where Spearance continued drinking. After the bar, the three of them returned to Pruitt and Spearance's house and engaged in the planned threesome.

The threesome lasted approximately an hour to an hour and a half. However, before the threesome ended Spearance got jealous because she felt Pruitt was paying too much attention to Tammie. Spearance left the room and began drinking again. After Tammie left, Spearance began arguing with Pruitt. During their fight, Spearance left the house in her car. Later, Spearance returned to the house.

After about 45 minutes to an hour, Spearance called her 16-year-old daughter. Spearance was crying and hysterical. Spearance's daughter testified that the volume of Spearance's voice was high. Spearance's daughter was also having difficulty understanding Spearance on the phone. Spearance told her daughter that Pruitt had "shot her in the vagina and stepped on her jaw and she was bleeding." 5 Report of Proceedings (RP) at 393. Spearance's daughter gave the phone to her father. Curry described Spearance as hysterical, very scared, and crying. Spearance told Curry that Pruitt choked her, slammed her on the ground, stuck a gun in her vagina, and shot her. Curry called the police. Spearance also sent Curry several text messages after the alleged assault.

When the police arrived, Spearance was still hysterical and was having difficulty answering questions. Eventually Spearance told the police that Pruitt put a gun in her vagina. She also stated

that Pruitt strangled her multiple times. The police found a shotgun and .45 caliber ammunition in the house. The police also found a bullet fragment in the house across the street.

Pruitt was arrested and the State charged him with second degree assault and unlawful possession of a firearm in the first degree. At Pruitt's arraignment, the court entered a no contact order prohibiting Pruitt from contacting Spearance. Prior to the trial, Pruitt contacted Spearance on multiple occasions. The State filed an amended information charging Pruitt with assault in the second degree with a firearm enhancement, two counts of unlawful possession of a firearm in the first degree, three counts of tampering with a witness, and nine counts of violation of a protection order.

At Pruitt's jury trial, Spearance claimed memory problems. Specifically, Spearance testified,

> I started crying and screaming into the phone, and I guess I had told her some things that weren't true. I told her that I was bleeding profusely, and I was shot in the vagina. I told her that I had a gun shoved in my mouth, you know. This is all from what I'm being told. I don't remember it. I guess the phone was handed to my ex-husband, and I remember bits and pieces of everything and him screaming at me and telling me to calm down.

3 RP at 132.

The State sought to introduce the statements that Spearance made to her daughter and Curry as excited utterances. Pruitt objected arguing that because of the length of time between the alleged assault and the statements, the statements were inadmissible as excited utterances. The trial court concluded that the length of time alone did not disqualify the statements as excited utterances and admitted the statements.

The jury found Pruitt guilty of all the charges. The trial court sentenced Pruitt to 120 months total confinement. Pruitt appeals.

ANALYSIS

I. HEARSAY EVIDENCE

We review a trial court's ruling on the applicability of a hearsay exception for an abuse of discretion. *State v. Rodriguez*, 187 Wn. App. 922, 939, 352 P.3d 200, *review denied*, 184 Wn.2d 1011 (2015). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons. *Rodriguez*, 187 Wn. App. at 939.

Under ER 801(c), "hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 803(a)(2) provides a hearsay exception for statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." For the excited utterance exception to apply, the statement must satisfy three requirements: (1) a startling event or condition occurred, (2) the statement was made under the stress of the startling event or condition, and (3) the statement related to the startling event or condition. *State v. Ohlson*, 162 Wn.2d 1, 8, 168 P.3d 1273 (2007). Relevant factors include the statement's spontaneity, the passage of time, the declarant's emotional state, and the declarant's opportunity to reflect or fabricate a story. *State v. Williamson*, 100 Wn. App. 248, 258, 996 P.2d 1097 (2000).

Here, a startling event or condition occurred because Spearance got into a heated argument with Pruitt which made her extremely upset. And, Spearance made the statements while still under the stress of the event because she was crying, loud, and upset. Finally, the statements related to the startling event because Spearance was telling her daughter her account of the argument and

altercation between her and Pruitt. Because all three requirements for an excited utterance were met, the trial court did not abuse its discretion by admitting the statements as excited utterances.

However, Pruitt argues that the trial court abused its discretion by admitting Spearance's statements because Spearance acknowledged fabricating at least a portion of her statements and because of the passage of time between the assault and the statement. First, Pruitt's assertion that Spearance acknowledged fabricating her statements is not supported by the record. Rather, Spearance admitted that she did not remember making the statements but, from what she had been told, some of the things she said were false. Although there is uncontroverted evidence that part of Spearance's statement was false, there is no evidence in the record that demonstrates Spearance consciously fabricated her story. Because there was no evidence of conscious or willful fabrication, the trial court did not abuse its discretion by admitting Spearance's statements. *See State v. Young*, 160 Wn.2d 799, 807-08, 161 P.3d 967 (2007) (explaining a subsequent recantation does not render an excited utterance inadmissible without definitive evidence that establishes the initial statement was fabricated).

Second, the trial court did not abuse its discretion by admitting the statements despite the passage of time between the argument and Spearance's statements. The passage of time is only one consideration in determining the admissibility of an excited utterance and the passage of time will not preclude admission of a statement if the person making the statement is still under the stress of the startling event or condition at the time he or she makes the statement. *State v. Strauss*, 119 Wn.2d 401, 416-17, 832 P.2d 78 (1992), abrogated on other grounds by *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Here, the trial court found that the passage of time alone was not grounds for excluding the statement because Spearance was

still upset at the time that she made the statements. Because the passage of time did not alleviate the stress of the startling event, the trial court did not abuse its discretion by admitting the statements.

## II. SUFFICIENCY OF THE EVIDENCE

Evidence is sufficient to support a conviction if, viewing the evidence in the light most favorable to the State, any rational trier of fact can find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All reasonable inferences from the evidence are drawn in favor of the State and interpreted most strongly against the defendant. *Salinas*, 119 Wn.2d at 201. A claim of insufficiency of the evidence "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201.

Pruitt contends that the certified copy of the no contact order was insufficient to establish that he had knowledge of the no contact order because the no contact order does not contain his signature. However, the order states that the no contact order was done in the presence of the defendant and that he was unable to sign because he was shackled. Ex. 42. Taking the evidence in the light most favorable to the State, the certified copy of the no contact order establishes that Pruitt was present when the court ordered and imposed the no contact order. Therefore, there was sufficient evidence for a reasonable jury to find that Pruitt had knowledge of the no contact order.

## STATEMENT OF ADDITIONAL GROUNDS (SAG)

### I. IMPROPER CROSS-EXAMINATION ON ALLOCUTION

Pruitt argues that the State improperly cross-examined him during his allocution but the record belies this assertion. He specifically cites to "10 RP 932-34" for the State's allegedly

improper cross-examination. SAG at 1. On the pages Pruitt cites, the State is explaining the circumstances regarding Pruitt's marriage to the victim shortly after he was convicted of these offenses. The State was speaking directly to the court and did not ask Pruitt any questions or even directly address him. Therefore, there was no improper cross-examination.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

To prevail on an ineffective assistance of counsel claim, Pruitt must show both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). If a defendant claims ineffective assistance of counsel, but fails to establish either deficient performance or prejudice, the claim must fail. *Strickland*, 466 U.S. at 697. Counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705-06, 940 P.2d 1239 (1997). Our scrutiny of counsel's performance is highly deferential and we strongly presume reasonableness. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). To rebut this presumption, a defendant bears the burden of establishing the absence of any conceivable legitimate trial tactic explaining counsel's performance. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). "The decision to call a witness is generally a matter of legitimate trial tactics and will not support a claim of ineffective assistance of counsel." *State v. Byrd*, 30 Wn. App. 794, 799, 638 P.2d 601 (1981).

Pruitt claims in his SAG that his counsel was ineffective for failing to call Tammie as a witness in his trial. However, the decision of whether to call witnesses is generally a matter of legitimate trial tactics. There is nothing in the record before this court that establishes Tammie had any knowledge about the assault. And Spearance testified that the threesome ended and Tammie left before the argument started. Because nothing in the record establishes that Tammie

7

would have provided exculpatory, or even relevant, information, the decision not to call her was a legitimate trial tactic. Therefore, Pruitt has failed to show that his counsel's performance was deficient and his ineffective assistance of counsel claim fails.

III. ADMISSION OF TEXT MESSAGES

Pruitt also claims in his SAG that the trial court erred by admitting text messages between Curry and Spearance without having the text messages authenticated by the wireless service provider. We review the trial court's decision to admit evidence for a manifest abuse of discretion. *State v. Barry*, 184 Wn. App. 790, 801-02, 339 P.3d 200 (2014). A trial court abuses its discretion when its decision is manifestly unreasonable, or exercised on untenable grounds or for untenable reasons. *Barry*, 184 Wn. App. at 802.

"The requirement of authentication . . . as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." ER 901(a). Under ER 901(b)(10), testimony establishing the purported sender and "the appearance, contents, substance, internal patterns, or other distinctive characteristics of the e-mail, taken in conjunction with the circumstances, [is] sufficient to support a finding that the e-mail in question is what the proponent claims." The methods for authenticating e-mails apply to text messages. *State v. Young*, 192 Wn. App. 850, 855-56, 369 P.3d 205, *review denied*, 185 Wn.2d 1042 (2016).

Curry testified that he knew he was texting with Spearance based on how she was talking to him and how she relates to him. Curry's testimony regarding the contents, substance, and internal patterns of the text messages establish that Spearance was the person texting him.

Therefore, the trial court did not abuse its discretion by concluding that the text messages were adequately authenticated and admitting them into evidence.

## IV. ADMISSION OF SHOTGUN AND BULLET FRAGMENT

Pruitt next claims in his SAG that the trial court erred by admitting the shotgun found in the home and the bullet fragment found in the neighbor's home. However, there was no objection to the admission of either piece of evidence. A party waives the right to appeal an error if the party does not object before the trial court. RAP 2.5(a); *State v. O'Hara*, 167 Wn.2d 91, 97-98, 217 P.3d 756 (2009). Because Pruitt did not object to the admission of the shotgun or the bullet fragment, he has waived his challenge on appeal.

## STATE'S ASSIGNMENT OF ERROR

The State argues that the trial court erred by incorrectly running Pruitt's firearm sentencing enhancement concurrently with the sentences for the underlying offenses. However, the State failed to file a notice of appeal. RAP 2.4(a) states,

> The appellate court will grant a respondent affirmative relief by modifying the decision which is the subject matter of the review only (1) if the respondent also seeks review of the decision by the timely filing of a notice of appeal or a notice of discretionary review, or (2) if demanded by the necessities of the case.

The "necessities of the case" provision is generally applied "when the petitioner's claim cannot be considered separately from issues a respondent raises in response." *State v. Sims*, 171 Wn.2d 436, 444, 256 P.3d 285 (2011). Here, the State's issue can be considered separately from Pruitt's issues because Pruitt does not raise any issues related to his sentence or length of confinement. Accordingly, consideration of the State's assignment of error is not demanded by the necessities

of the case. And the State concedes that it has another remedy under CrR 7.8. Thus, we decline to consider the State's assignment of error regarding sentencing without a timely notice of appeal.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

BJORGEN, C.J.

MELNICK, J.