**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59531-1-II |
| Respondent, | |
| v. | |
| DAVID LEE ANDERSON, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. – David Anderson appeals his convictions of second degree burglary and third degree theft. The convictions arose out of Anderson's entry into a storage shed on private property. Anderson challenges the trial court's refusal to suppress statements he made to law enforcement officers, the trial court's ruling allowing the State to amend the information after it had rested, and the trial court's admission of a law enforcement officer's testimony about shoe prints at the scene of the burglary.

We hold that (1) the trial court did not err when it admitted Anderson's statements to law enforcement officers after the officers pulled over his car and talked to him without advising him of his *Miranda*[1] rights; (2) the trial court did not abuse its discretion when it allowed the State to

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

amend the information to change the address of the burglary after it had rested and Anderson had presented evidence that the address in the information was incorrect, because the amendment did not prejudice Anderson; (3) the trial court did not abuse its discretion when it allowed a law enforcement officer to testify about similarities between shoe prints found in the storage shed and Anderson's shoes; and (4) as the State concedes, the crime victim penalty assessment (VPA) must be stricken from the judgment and sentence.

Accordingly, we affirm Anderson's convictions, but we remand for the trial court to strike the VPA from the judgment and sentence.

FACTS

On July 21, 2021, Richard Anders noticed a green and silver SUV parked near a storage shed adjoining his property in Centralia. While he wrote down the vehicle's license plate number, he saw Anderson exit the shed. Anderson told Anders that he was exploring the shed and that he was not hurting anything. Anders heard someone else in the shed and called the police. While Anders was talking to police dispatch, Jesika Jellison, Anderson's girlfriend, exited the shed. Shortly thereafter, Anderson and Jellison drove away.

Lewis County Sheriff's Deputy Sam Schouten responded to Anders' call. Schouten requested the assistance of Centralia police to locate Anderson's vehicle. Centralia police officer Andrew Huerta stopped Anderson, who was driving a vehicle with the same license plate number as Anders reported that matched the description of the suspect vehicle. Huerta turned on the lights of his patrol vehicle when he made the stop. Huerta notified Anderson and Jellison that he had stopped them to investigate a trespass complaint. At some point, another officer arrived at the scene with their patrol vehicle lights on.

Both Anderson and Jellison told Huerta that they had entered the shed. Anderson explained that he was part of an urban exploring group that visited abandoned buildings. Anderson and Jellison stated that they had been confronted by the owner of the shed and that they left the property soon after.

After about 10 minutes, Schouten arrived at the scene with his emergency lights on. Schouten asked Anderson what he had been doing at the property. Anderson said that they were urban exploring and had gone to the shed because it looked abandoned, but they did not go inside. Anderson said that they had gone onto the property but had not taken anything.

Schouten left the scene of the traffic stop to contact Anders and visit the shed. He photographed shoe prints in the shed that he suspected belonged to Anderson and/or Jellison.

About 30 to 40 minutes later, Schouten returned. While Schouten was gone, Anderson and Jellison remained in their vehicle. Schouten again asked Anderson what he had been doing at the shed. Anderson said that they had gone into the shed but had not taken anything. At that point, Schouten placed Anderson under arrest and advised him of his *Miranda* rights.

The State charged Anderson with second degree burglary and third degree theft. The information stated that Anderson entered or remained unlawfully "in the building located at 2479 Seminary Hill Road" in Centralia. Clerk's Papers (CP) at 1. However, the probable cause affidavit stated that officers were dispatched to a trespass *near* 2479 Seminary Hill Road.

*CrR 3.5 Hearing*

The trial court held a CrR 3.5 hearing to determine the admissibility of the statements Anderson and Jellison made to Huerta and Schouten. Huerta testified that he conducted a traffic stop and described his interaction as follows:

> Q. Okay. And what did you tell them the reason for the stop was?
> A. The original call, the trespass.

. . . .
Q. Okay. Once you informed them of the basis for the stop, did they say anything to you?
A. Yes. They both informed me that they had entered the storage shed.
Q. Okay. Did they say anything else?
A. Yes. Mr. Anderson advised he was part of a Facebook urban exploring group and that -- that explored abandoned buildings.

Rep. of Proc. (RP) at 18. Huerta did not recall the words that were exchanged that led to Anderson's statement that they had entered the shed.

Schouten testified as follows:

A. I made contact at the driver's side window with Mr. Anderson, as he was in the driver's seat.
Q. Okay.
A. And I briefly asked what he was doing up where the reporting party had contacted him.
Q. Okay. And do you recall what he said?
A. He told me that they were -- he and [Jellison] were out, an evening away from their kid, doing what he called, quote/unquote, urban exploring. And that had gone to the building because it looked abandoned, but he did not go inside the building.

RP at 42-43. Schouten admitted that he then said, "If you're lying to me, then someone's going to jail." RP at 52.

The trial court entered findings of fact. Finding of fact 1.4 stated that both Anderson and Jellison told Huerta that they had entered the shed. Finding of fact 1.5 stated that Anderson told Schouten that they had been on the property but did not take anything. That finding of fact did not reflect that Schouten had said "If you're lying to me, then someone's going to jail." The trial court entered the following conclusions of law:

2.1 The defendants['] statements to law enforcement after the initial vehicle stop are admissible to both Officer Huerta and to Deputy Schouten. The initial contact was brief, particularly with Deputy Schouten, the statements were non-custodial, and *Miranda* warnings were not required. The Court finds that the statements were voluntary and are admissible.

4

2.2 The statements made by the defendant, Anderson, to Deputy Schouten when he returned to the vehicle stop location after 30-40 minutes of investigating the scene are not admissible. *Miranda* warnings should have been read to defendant Anderson, prior to the questioning, 30-40 minutes into the investigation.

CP at 8-9.

*Bench Trial*

A bench trial took place in September 2022. Anders testified that his shed did not have an address but that it was located next to 2479 Seminary Hill Road. He stated that the shed was visible from the road, there were two gates leading to the shed, and that there was a no trespassing sign on it. Anders stated that he saw a man that he identified as Anderson coming out of the shed.

Anders testified that he had visited the shed two days before the incident and noted that a well pump inside the shed was covered up, tied down, and secured. He stated that after he saw Anderson and Jellison leaving the shed, he saw that the cover from the well pump had been removed and other property had been moved. Anders also testified that he noticed that other property inside the shed had been moved and staged by the door as if to be taken away. Anders explained that he later learned that he was missing some fuses and an old lock from the shed.

Huerta testified that Anderson told him that they had entered the shed but had not taken anything. Anderson said that they were part of an urban explorer group. Huerta also testified that when he remained with Jellison while Schouten was talking with Anderson, he saw her remove a glass fuse from her pants.

Schouten testified that Anderson told him that they had been on the property but did not take anything. Schouten stated that when he searched Anderson incident to arrest he found a small, rusty padlock in his pocket.

5

Schouten also testified about what he saw inside the shed. He said he took photos of the ground inside the shed because he noticed shoe prints. Schouten explained that they appeared to be fresh shoe prints based the on the ridges of the prints and the fact that they were undisturbed. He noticed that the tread patterns on the bottom of Anderson's and Jellison's shoes were similar to the prints inside the shed.

Anderson objected to this testimony, arguing that Schouten lacked the necessary training and experience to make that determination. The trial court overruled the objection, explaining, "It goes to weight, not admissibility." RP at 125.

The State rested. Anderson then testified. He stated that he and Jellison belonged to a Facebook group that took pictures of abandoned buildings. Anderson admitted that they entered the shed, which he described as having the roof caved in and no door. He looked at photos of the shed and confirmed that it was the building that he had entered. Anderson stated that they looked around and came out when someone outside yelled at them. He said that the lock in his pocket came from Jellison's mother's house, not from the shed.

Anderson also presented testimony from Schouten, who stated that the shed was not located at 2479 Seminary Hill Road. The State then moved to file a second amended information, in which it changed the location of the burglary from "a building located at 2479" to "[a] building located near 2479." RP at 172. Anderson objected, arguing that the State waited too long to change the information. He argued that the address of the burglary was an essential element of the crime. The State argued that Anderson was on notice of the change because the probable cause affidavit stated the property was "near 2479" and not "at." RP at 175. The State also argued that based on the photos, testimonial descriptions, and Anders' eyewitness account, there was no confusion about where the crime occurred.

6

The trial court allowed the amendment. The court stated,

> This is not a necessary element. There's no question of, especially in this rural area, what the building was that we're talking about. There's no prejudice to this because everybody knows the building, the description, and the affidavit of probable cause in the report . . . says that it's near this address.
>
> We have Mr. Anders saying that this specific address or parcel didn't have an address. So the fact that it's near, that's a scrivener's error, that's allowed under the rule for an amendment. I'm finding that there is not prejudice.
>
> I understand that the Defense was relying on that technicality. But that does not have a – that's not prejudice as anticipated or as contemplated in that rule.

RP at 177. The State subsequently filed the amended information.

Anderson then presented additional testimony from the county assessor and Anders that showed that the shed was not located at 2479 Seminary Hill Road.

After the conclusion of the trial, the trial court found Anderson guilty of second degree burglary and third degree theft. The court entered findings of fact and conclusions of law that included guilty findings on both counts. At sentencing, the court found that Anderson was indigent under RCW 10.101.010(3) but imposed a $500 VPA.

Anderson appeals his conviction and the imposition of the VPA.

## ANALYSIS

### A.    ADMISSIBILITY OF PREARREST STATEMENTS

Anderson argues that the trial court erred in failing to suppress the statements he made to Huerta and Schouten before he was informed of his *Miranda* rights. We disagree.

#### 1.    Legal Principles

Under CrR 3.5, the trial court must conduct a hearing before admitting a defendant's statement into evidence. The purpose of a CrR 3.5 hearing is to prevent "the admission of

*involuntary, incriminating statements.*" *State v. Williams*, 137 Wn.2d 746, 751, 975 P.2d 963 (1999).

*Miranda* requires that before subjecting a person to custodial interrogation, law enforcement officers are required to inform the person of the right to remain silent and the right to an attorney. *State v. Escalante,* 195 Wn.2d 526, 532, 461 P.3d 1183 (2020). If a person is not informed of their *Miranda* rights, the person's statements made during a custodial interrogation generally are inadmissible. *Id.*

We review de novo whether a person is in custody for purposes of *Miranda*. *Id.* at 531. A person is in custody when their freedom of action has been reduced in such a way as to resemble a formal arrest. *Id.* at 533. Significantly, our Supreme Court has noted that "even if a person is 'seized' within the meaning of the Fourth Amendment – such that a reasonable person in their position would not feel free to leave or otherwise terminate the encounter with law enforcement – they are not necessarily in 'custody' for *Miranda* purposes." *Id.* "Custody" refers to " 'circumstances that are thought generally to present a serious danger of coercion.' " *Id.* (quoting *Howes v. Fields*, 565 U.S. 499, 508-09, 132 S. Ct. 1181, 182 L. Ed. 2d 17 (2012)).

The relevant inquiry for determining when a person is in custody is "an objective one that asks how a reasonable person in the suspect's position would have understood the circumstances." *Escalante*, 195 Wn.2d at 533.

> To determine whether a reasonable person in the suspect's position would feel restrained to the degree associated with formal arrest, a court examines the totality of the circumstances. Relevant circumstances may include the nature of the surroundings, the extent of police control over the surroundings, the degree of physical restraint placed on the suspect, and the duration and character of the questioning.

*Id*. at 533-34.

Interrogation by law enforcement includes express questioning, " 'but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police.' " *State v. Butler*, 34 Wn. App. 2d 614, 621-22, 570 P.3d 383 (2025) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980)).

In *Escalante*, the court noted that the United States Supreme Court in *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984), held that a person detained during a traffic stop generally is not in custody for *Miranda* purposes. *Escalante*, 195 Wn.2d at 534. The court in *Berkemer* stated that a traffic stop is more analogous to a *Terry*[2] stop, under which officers are allowed to briefly detain and question a person. 468 U.S. at 439. Ordinary traffic stops do not constitute custodial interrogations because they generally are temporary and brief, "the atmosphere surrounding an ordinary traffic stop is substantially less police-dominated" than in police station interrogations, and traffic stops typically are in public. *Id.* (quoting *Berkemer*, 468 U.S. at 438-39).

Washington courts have held that an officer may question a person during a traffic stop or a *Terry* stop without informing a person of their *Miranda* rights. Our Supreme Court stated,

> [T]he Court [in *Berkemer*] recognized that because both traffic stops *and* routine *Terry* stops are brief, and they occur in public, they are "substantially less 'police dominated' " than the police interrogations contemplated by *Miranda*. Thus, a detaining officer may ask a moderate number of questions during a *Terry* stop to determine the identity of the suspect and to confirm or dispel the officer's suspicions without rendering the suspect "in custody" for the purposes of *Miranda*.

---

[2] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

*State v. Heritage*, 152 Wn.2d 210, 218, 95 P.3d 345 (2004) (quoting *Berkemer*, 468 U.S. at 439) (citations omitted). "[M]ere investigatory stops are not custodial interrogations requiring a *Miranda* warning. A suspect may be asked to identify himself or to explain his activities without first receiving a *Miranda* warning." *State v. Kolesnik*, 146 Wn. App. 790, 811, 192 P.3d 937 (2008) (citations omitted). "Temporary detainment following a routine traffic stop does not constitute custody for purposes of *Miranda*." *City of Coll. Place v. Staudenmaier*, 110 Wn. App. 841, 849, 43 P.3d 43 (2002).

We review challenged findings of fact entered after a CrR 3.5 hearing for substantial evidence and review de novo whether those findings support the trial court's conclusions of law. *State v. Rosas-Miranda*, 176 Wn. App. 773, 779, 309 P.3d 728 (2013).

2.   Analysis

Here, the trial court concluded that Anderson was not in custody for purposes of *Miranda* when he made the statements to Huerta and Schouten. We agree.

Huerta conducted a traffic stop after receiving a report of a trespass. He told Anderson the reason for the stop, and Anderson explained what he and Jellison had done. Schouten then arrived at the scene of the traffic stop, but he simply asked Anderson what he was doing up at the property. Both interactions were on a public road and were brief. The officers had activated their patrol car lights and a third officer also arrived with patrol lights on, but the atmosphere fell short of being coercive. Nothing about this initial interaction suggests that Anderson's freedom of action was reduced in such a way as to resemble a formal arrest, as *Escalante* requires.[3]

---

[3] Schouten did escalate the coerciveness of the situation by saying, "If you're lying to me, then someone's going to jail." RP at 52. But this statement was made after Anderson made the statement that Schouten was allowed to recount at trial – that he had been on the property.

Further, *Burkemer*, 468 U.S. at 439, *Heritage*, 152 Wn.2d at 218, and *Kolesnik*, 146 Wn. App. at 811, all support the conclusion that *Miranda* warnings are not required for this type of investigatory stop. Huerta and Schouten were allowed to "ask a moderate number of questions . . . to confirm or dispel [their] suspicions" without informing Anderson of his *Miranda* rights. *Heritage*, 152 Wn.2d at 218.

We hold that the trial court did not err when it admitted Anderson's statements to Huerta and Schouten.

B.      AMENDMENT OF THE INFORMATION

Anderson argues that the trial court erred when it allowed the State to amend the information after it rested to change the address where the burglary occurred. We disagree.

1.      Legal Principles

Article I, section 22 of the Washington Constitution states that criminal defendants have a right "to demand the nature and cause of the accusation against him." Under this provision, " '[t]he accused, in criminal prosecutions, has a constitutional right to be appraised of the nature and cause of the accusation against him. . . . This doctrine is elementary and of universal application, and is founded on the plainest principle of justice.' " *State v. Gehrke*, 193 Wn.2d 1, 6, 434 P.3d 522 (2019) (quoting *State v. Ackles*, 8 Wash. 462, 464-65, 36 P. 597 (1894)). Defendants have a right to be informed of the charge against them, and cannot be tried for offenses with which he is not charged. *Gehrke*, 193 Wn.2d at 6. As a result, "the State must allege in the charging document all *essential* elements of a crime to inform a defendant of the charges against him and to allow for preparation of his defense." *State v. Brooks*, 195 Wn.2d 91, 97, 455 P.3d 1151 (2020).

11

The State generally may not amend the information to charge a different crime after the State has rested its case in chief. *Gehrke*, 193 Wn.2d at 9. However, this rule does not apply when the amendment does not change the charged crime or the crime's essential elements. *Brooks*, 195 Wn.2d at 98.

CrR 2.1(d) provides that the trial court "may permit any information . . . to be amended at any time before verdict or finding if substantial rights of the defendant are not prejudiced." When the State moves to amend the information in a way that does not impact the criminal charge, the defendant generally must demonstrate prejudice under CrR 2.1(d) to defeat the motion. *Brooks*, 195 Wn.2d at 98.

We review for abuse of discretion a trial court's ruling on a proposed amendment to an information. *Id.* at 96. The trial court abuses its discretion when its decision is manifestly unreasonable or is based on untenable grounds or reasons. *Id.* at 97.

2. Analysis

Here, the State moved to amend the information after it rested to correct the address where the burglary occurred. The State did not move to amend to change a different crime, and Anderson agrees that the exact address of the burglary is not an essential element of the crime. Therefore, the question is whether the trial court abused its discretion when it ruled that Anderson would not be prejudiced by the amendment to the information.

It is clear that Anderson and the other witnesses understood that the crime took place at the shed. Anders saw Anderson exit the shed. Anders described where the shed was located. And Anderson testified that he entered the same building described by Anders. Anderson also identified the shed in a picture during his testimony. In addition, Anderson was on notice about

the potential street address of the shed because the probable cause affidavit stated that the shed was located "*near* 2479 Seminary Hill Road." CP at 4 (emphasis added).

Anderson argues that he was prejudiced by this amendment because it contained new details about the crime that should have been introduced before the State rested its case. He argues that changing the address location altered his trial strategy, causing surprise and amounting to prejudice.

But Anderson fails to explain how the State's amendment to the location of the shed on the information surprised or prejudiced him. As discussed above, it was clear from the testimony during the case that Anderson understood which property he was charged with trespassing.

Anderson cites to *State v. Lamb*, where the Supreme Court acknowledged that the trial court in the exercise of its discretion "may deny a motion to amend an information irrespective of prejudice to a defendant." 175 Wn.2d 121, 131, 285 P.3d 27 (2012). However, the court in *Lamb* noted that this rule applies on appeal only when the trial court denies a motion to amend. *Id.* at 130-31. The court stated that when the defendant appeals the trial court's decision to allow an amendment, "[t]he defendant's burden . . . is to demonstrate prejudice to his or her substantial rights." *Id.* at 130. Anderson fails to do so here.

Anderson argues that the trial court failed to recognize that it had the discretion to deny the motion to amend even in the absence of prejudice. But the trial court addressed prejudice as required under CrR 2.1(d). There is no indication in the record that the court believed it did not have the discretion to deny the motion in the absence of prejudice.

Accordingly, we hold that the trial court did not abuse its discretion when it allowed the State to amend the information.

C.    ADMISSION OF SHOE PRINT TESTIMONY

Anderson argues that the trial court erred when it allowed Schouten to testify that Anderson's and Jellison's shoes matched the shoe prints he found inside the shed.  We disagree.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  ER 401.  Lay witnesses may testify to opinions or inferences that are "rationally based on the perception of the witness."  ER 701(a).  We review the trial court's admission of evidence for abuse of discretion.  *State v. Young*, 192 Wn. App. 850, 854, 369 P.3d 205 (2016).

Schouten took photos of shoe prints he saw in the shed.  He believed the prints belonged to Anderson or Jellison because they looked fresh.  Schouten compared the photographs of shoe prints from the shed building with photos of the soles of Anderson's and Jellison's shoes.  He identified that the tread pattern on the shoes was similar to the tread marks left by the shoe prints.  This testimony was relevant to proving that Anderson and Jellison had entered the shed.

Anderson argues that the trial court erred when it admitted Schouten's testimony because shoe print analysis requires specialized training, and Schouten was a lay witness not qualified to testify about the shoe prints.  And he claims that shoe print comparison testimony is not scientifically reliable.  But Schouten was not providing any sophisticated, expert analysis of shoe prints.  He was simply testifying about his observations, which he was entitled to do under ER 701(a).

Anderson also argues that that shoe print comparison evidence can only be introduced with an expert witness, citing *State v. Groth*, 163 Wn. App. 548, 261 P.3d 183 (2011).  In that case, an expert "human tracker" testified about footprints at the crime scene.  *Id*. at 556.  He

examined photographs of footprints and testified that they showed "overlapping impressions indicating that two individuals, wearing shoes with soles consistent with those of the defendant and victim, were physically engaged on the night of the murder." *Id*. at 562. The court held that the testimony was admissible because he was qualified as an expert in tracking based on his skills and experience. *Id*. at 563.

But *Groth* involved the specialized file of human tracking, not simple shoe print comparison. And Anderson cites to no legal authority to support his contention that shoe print matching can only be done by expert witnesses.

Accordingly, we hold that the trial court did not err when it admitted Schouten's testimony about the shoe prints in the shed.

D.     CRIME VICTIM PENALTY ASSESSMENT

Anderson argues, and the State concedes, that the $500 VPA should be stricken from his judgment and sentence. We agree.

Effective July 1, 2023, RCW 7.68.035(4) prohibits courts from imposing the VPA on indigent defendants as defined in RCW 10.01.160(3). *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023), *review granted*, 4 Wn.3d 1009 (2025). For purposes of RCW 10.01.160(3), a defendant is indigent if they meet the criteria in RCW 10.101.010(3). Although this amendment took effect after Anderson's sentencing, it applies to cases pending on appeal. *Ellis*, 27 Wn. App. 2d at 16.

The trial court determined that Anderson was indigent under RCW 10.101.010(3). Therefore, we remand for the trial court to strike the $500 VPA from the judgment and sentence.

CONCLUSION

We affirm Anderson's convictions, but we remand for the trial court to strike the VPA from his judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
VELJACIC, A.C.J.

_____
PRICE, J.