[No. 65936-7-I.   Division One.   January 17, 2012.]

CRAIG RICE, *Appellant*, v. OFFSHORE SYSTEMS, INC.,
*Respondent*.

*Donald H. Mullins* and *Mark K. Davis* (of *Badgley Mullins Law Group PLLC*), for appellant.

*Matthew C. Crane* and *Susan Kaplan* (of *Bauer Moynihan & Johnson LLP*), for respondent.

¶1 LAU, J. — Craig Rice sued his employer, Offshore Systems Inc. (OSI), after he was terminated for alcohol intoxication and disorderly conduct involving a vessel fire at OSI's port facility. Rice contends OSI terminated his employment as a result of age discrimination. Because Rice presented evidence of discriminatory pretext sufficient to create material fact issues, we reverse summary judgment in OSI's favor.

## FACTS[1]

¶2 We view the facts in the light most favorable to Rice. In 1991, Rice began working for OSI at age 43 as a stevedore. The work there is "very demanding," and "[t]he working environment [is] very much like a Wild West atmosphere." Rice held positions as forklift driver, night foreman, and, finally, yard foreman—the third most senior position at the facility. Supervisor Jared Davis described Rice's work ethic and understanding of the job as very good. He also rated Rice's attendance and job knowledge as "excellent" on an employee evaluation. Over the years, Rice earned promotions, pay raises, and bonuses. He also earned certification as the facility's safety and training officer. This required 40 hours of course work on fire and crisis management and annual refresher courses on emergency preparedness and response. Rice testified that he frequently entertained OSI employees and customers at his home and on his

---

[1] Below, OSI submitted declarations and deposition excerpts from Jared Davis and Nicholas Reed, deposition excerpts from Rice, Rice's interrogatory responses, and exhibits. Rice submitted a declaration, OSI's responses to requests for admissions, Davis and Reed deposition excerpts, and a declaration from Andrew Murphy. The parties also submitted attorney declarations.

boat. OSI customer Andrew Murphy testified that any time his crew needed help, "[Rice] was always willing to provide whatever services he could so we could get our job done as efficiently as possible."

¶3 In 2000, OSI hired Davis, about age 25, as its operations manager. Davis and Rice got along until about 2005. Rice testified Davis began making derogatory comments about his age. He described that Davis frequently referred to him as an "old goat" in front of other employees, told him "you're too old to stay on the job," and repeatedly tried to shift Rice's job duties to a younger employee, Matt Scott. Rice viewed these remarks as serious, not innocently made or said jokingly. These comments continued throughout 2006 and 2007, when Davis fired him. These remarks encouraged other employees to make similar age derogatory comments. Assistant yard foreman Nicholas Reed, who worked for Rice, overheard employees comment that Rice was going senile. Reed could not tell whether these comments were jokes or serious.

¶4 On December 12, 2007, a vessel owned by OSI's customer, Fishing Company of Alaska (FCA), caught fire while tied to another vessel moored at the north end of OSI's main dock. At the time, Rice was off duty and at home. Reed, who was also off duty, heard about the fire and went to Rice's home. Reed said the house smelled of alcohol and Rice was passed out or asleep on the couch. Reed woke Rice up, and because Reed "was kind of in a panic . . . and . . . didn't know what to do," Rice told him to stay calm. Reed testified that Rice was intoxicated based on the alcohol smell, his demeanor at the fire, and slurred speech. Rice testified he had consumed "a couple of drinks" at dinner but denied that he was intoxicated.[2] Rice testified he took charge of the scene only because OSI failed to follow its general practice requiring at least two senior managers to

---

[2] Rice also testified due to the harsh and demanding work environment, OSI employees and others working at Dutch Harbor frequently drank excessively and used foul language. As a result, fistfights were common occurrences.

remain on site at all times. Davis acknowledged no senior managers were present during the fire and Rice was the only senior management person on site.

¶5 Rice testified that when he arrived at the fire scene, Reed "was disoriented and in a state of panic" and "repeatedly asked for [Rice's] instruction on what to do." Rice also described the fire scene:

> 39. . . . I became concerned because the police and fire officials were not communicating with [Reed] or I about the status of fire and whether there was any danger to OSI's dock, fuel storage tanks, or employees. . . .
>
> . . . .
>
> 42. Without any information from police or fire officials, I could only observe the thick black smoke and guess whether the fire was out of control. . . .
>
> 43. . . . As time continued to pass without any update from police or fire officials, I became more assertive . . . .
>
> . . . .
>
> 45. Frustrated with the lack of information, I contacted Dunlop Towing to see if a tug boat was available in the event the fire was not contained. [An FCA representative also contacted Dunlop Towing for the same purpose. No tug boat was ordered.]
>
> . . . .
>
> 48. . . . I became even more concerned when fire officials asked [Reed] and I to provide water hoses to fight the fire" [but still] instructed Reed to provide the fire officials with whatever they needed.

Decl. of Craig Rice. Rice denied OSI's claims that he used foul or derogatory language, spat toward a police officer, interfered with or harassed police or fire officials, or attempted to cut the lines to the FCA vessel. He also denied being intoxicated or mistreating OSI employees, customers, or local officials.

¶6　Police reports prepared by Unalaska Officer Brandon Hunter and Sergeant Shockley[3] described the fire scene events.[4] While waiting for updates, Rice "repeatedly attempted to interfere with the fire response, stating that it 'wasn't the fire department's call what happened at his dock.'" Officer Hunter reported that Rice appeared upset about the fire scene and demanded information about the fire's status. Rice appeared intoxicated and irrational. The reports also stated that fire official Sydney Johnson thought fuel tanks presented little danger to the OSI personnel or facility. The fire was "relative[ly] small" and "all signs pointed towards its being contained" on the vessel. Rice threatened to cut the FCA vessels loose to be towed out to the bay to burn. Sergeant Shockley saw Rice's disruptive behavior and approached him. She explained to Rice that cutting the vessels loose was not an option. She also told Rice that the fire department had control over the scene until the fire was contained and Rice should allow them to perform their jobs. Rice began shouting at her that he "was in charge of OSI," and he demanded that "the two FCA vessels be towed into the bay and left to burn out there."

¶7　The reports further explained that as Rice started to move toward a group of fire fighters, Shockley physically restrained him. Shockley reported that he screamed at her to get her hands off him and she could not tell him what to do. Reed testified he saw Rice spit in Shockley's direction and heard him say "dyke" and "bitch." Police officers told Rice that he was disorderly and would be arrested if he did not calm down. After fire captain Roger Deffendall spoke to

---

[3] Sergeant Shockley's first name is not in our record.

[4] Officer Hunter and Sergeant Shockley prepared the incident reports based on their own observations and statements obtained from numerous witnesses at the scene. OSI submitted no deposition or declaration testimony from any police officers, fire officials, or witnesses mentioned in the police reports except Reed. And it submitted no deposition or declaration testimony from any witnesses Davis spoke to during his investigation. Davis had no personal knowledge about the fire incident. As such, the admissibility of the police reports is limited to show OSI's motive for firing Rice as discussed below.

Rice about the fire's status, Rice calmed down and left the scene.

¶8 When Davis returned from vacation, he spoke to Shockley, Reed, Glenn McConachie (the OSI night foreman on duty during the fire), and FCA representative Sherry Pugh about the fire. He also reviewed the police reports. Rice claims Davis never spoke to him to learn his version of the events. Davis never spoke with Officer Hunter, fire officials, or Alpha Welding employees who were present at the fire scene.

¶9 After completing his investigation, Davis telephoned Rice on January 5, 2008. Davis fired Rice and explained to him, "[You] tried to cut the lines on the FCA boat." According to Rice, this was the only reason given by Davis. Rice denied it, explaining, "[I]t would have been impossible for me to cut the lines because they were several inches in diameter." Rice testified OSI violated its own procedures by failing to notify him and then obtain his explanation before firing him. Rice testified he received a January 18, 2008 termination letter addressed "to whom it may concern." The letter provided all new grounds for his termination with no mention of the cut lines incident:

- The example his actions set for fellow employees.
- Being intoxicated while on the job.
- Harassing Police and Fire officials while responding to an emergency.
- Creating bad relations with OSI customers and local officials.
- The extremely poor treatment of employees that has been happening for many years, even while being warned and worked with to stop such actions.
- Possibly putting OSI in serious liability regarding the above incident.

¶10 Rice filed suit, alleging OSI discriminated against him based on his age in violation of the Washington Law

Against Discrimination, chapter 49.60 RCW. The court granted OSI's summary judgment motion. Rice appeals.

## ANALYSIS

### Motion To Strike

¶11 Before we review the trial court's decision granting summary judgment, we address whether the court erred by considering the Davis and Reed deposition excerpts and two police reports. We review de novo a trial court ruling on a motion to strike evidence made in conjunction with a summary judgment motion. *Momah v. Bharti*, 144 Wn. App. 731, 749, 182 P.3d 455 (2008) (" '[T]he de novo standard of review is used by an appellate court when reviewing all trial court rulings made in conjunction with a summary judgment motion.' " (alteration in original) (quoting *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998))). In response to OSI's summary judgment motion, Rice moved to strike these excerpts and reports because (1) the reports violate RCW 46.52.080 and lack authentication and (2) the evidence consists of hearsay, conclusion, and speculation contrary to CR 56(e).[5] Officer Hunter and Sergeant Shockley prepared incident reports that described Rice's alleged conduct during the fire: "attempted to interfere with the fire response . . . appeared intoxicated . . . acting irrationally . . . unreasonably . . . threatened to cut burning and neighboring vessels loose . . . extremely agitated . . . yelling at officers," to the point where police officers threatened to arrest him. We conclude

---

[5] CR 56(e) is explicit in its requirements, which serve the purpose of a summary judgment motion. Affidavits (and declarations) (1) must be made on personal knowledge, (2) shall set forth such facts as would be admissible in evidence, and (3) should show affirmatively that affiant is competent to testify to the matters stated. Further, "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." CR 56(e).

the reports were properly authenticated and RCW 46.52-.080 does not apply.

██ ¶12 ER 901 requires the proponent of the evidence to make a prima facie showing that the evidence is authentic—it is what it purports to be. *State v. Danielson*, 37 Wn. App. 469, 471, 681 P.2d 260 (1984). Because under ER 104 authenticity is a preliminary determination, the court may consider evidence that might otherwise be objectionable under other rules. *City of Bellevue v. Mociulski*, 51 Wn. App. 855, 859, 756 P.2d 1320 (1988). In making this preliminary determination, the court considers only the evidence offered by the proponent and disregards any contrary evidence offered by the opponent. *See, e.g., State v. Tatum*, 58 Wn.2d 73, 360 P.2d 754 (1961). Once a prima facie showing has been made, the evidence is admissible under ER 901. The opponent is free to object based on any other rules that may bar the evidence or offer contradictory evidence challenging authenticity. OSI made a prima facie showing that the police reports were prepared by Unalaska police officers who responded to the scene and interacted with Rice. Davis's July 2010 declaration established the reports' authenticity. Under ER 901(b)(4), authenticity may be established based on distinctive characteristics such as appearance, contents, substance, and internal patterns, together with circumstances. The police reports contain a unique Unalaska police department logo, an incident number, specific facts related to the vessel fire, and the identity and signature of the two officers who prepared the reports. Rice produced these reports in discovery and never challenged their authenticity—that the reports in question are what its proponent claims.

██ ¶13 Rice claims RCW 46.52.080 bars the police reports' admission. This provision expressly applies only to vehicle accidents—"[n]o such accident report or copy thereof shall be used as evidence in any trial, civil or criminal, arising out of an accident . . . ." RCW 46.52.080. The provision does not apply. He also argues the reports

contain inadmissible hearsay. We disagree. The reports were not offered to show Rice was drunk and disorderly. They were offered to show Davis's motivation for the decision to terminate Rice's employment. *See* ER 803(a)(3) (an exception to the hearsay rule is a statement of the declarant's then existing state of mind, such as motive); *Domingo v. Boeing Emps.' Credit Union*, 124 Wn. App. 71, 79, 98 P.3d 1222 (2004) ("Walsh's testimony was not offered for the truth of the matter asserted. Rather, it was offered to show Walsh's motivation for the decision to reprimand [Domingo] and eventually terminate Domingo's employment.").

¶14 Rice also argues that the Davis and Reed declarations and depositions lack personal knowledge and violate the rule against hearsay, conclusion, and speculation.[6] Davis's testimony about the missing written reprimands for Rice satisfy the personal knowledge requirement because Davis supervised Rice and wrote the reprimands about his job deficiencies. We agree Davis's testimony that Rice may have removed them from his own personnel file constitutes inadmissible speculation.

¶15 Reed's testimony describing Rice's intoxication at the fire scene was based on seeing and talking to Rice. He said Rice's house smelled like alcohol and he slurred his speech. Reed also observed Rice yelling at Sergeant Shockley. We conclude Rice's evidence arguments fail.

## Age Discrimination Claim

¶16 Rice argues the trial court erred by dismissing his age discrimination claim because he presented sufficient material evidence of discriminatory pretext to defeat summary judgment. OSI counters that the record shows mini-

---

[6] OSI correctly argues that on appeal, Rice failed to "specify or cite to the record which statements in what declarations [and deposition excerpts] he objected to as required by RAP 10.3(a)(5)." Resp't's Br. at 23 n.7. We note Rice responds by pointing to his "already submitted detailed briefing" below. Appellant's Reply Br. at 21 n.5.

mal to no pretext evidence, making summary judgment appropriate.

■■ ¶17 "We review summary judgments de novo and conduct the same inquiry as the trial court, considering all facts submitted and all reasonable inferences in the light most favorable to the nonmoving party." *Domingo*, 124 Wn. App. at 78 (footnote omitted). "Summary judgment should rarely be granted in employment discrimination cases." *Sangster v. Albertson's, Inc.*, 99 Wn. App. 156, 160, 991 P.2d 674 (2000).

■ ¶18 "It is an unfair practice for any employer ... [t]o discharge or bar any person from employment because of age . . . ." RCW 49.60.180(2). Washington courts look "to federal cases construing the Age Discrimination in Employment Act of 1967 (ADEA)," 29 U.S.C. § 621, for guidance. *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 361, 753 P.2d 517 (1988).

■ ¶19 In an action alleging age discrimination in employment, the employee has the initial burden of presenting a prima facie case of age discrimination. *Roberts v. Atl. Richfield Co.*, 88 Wn.2d 887, 892, 568 P.2d 764 (1977). To make out a prima facie case, an employee must show that he or she (1) was within the statutorily protected age group, (2) was discharged, (3) was doing satisfactory work, and (4) was replaced by a younger person. *Grimwood*, 110 Wn.2d at 362 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). The protected age group includes employees 40 years of age and older. RCW 49.44.090(1). " 'A prima facie case under *McDonnell Douglas* raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.' " *Sellsted v. Wash. Mut. Sav. Bank*, 69 Wn. App. 852, 862, 851 P.2d 716 (1993) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S. Ct. 2943, 57 L. Ed. 2d 957 (1978)). It is undisputed that Rice presented enough evidence to make out a prima facie age discrimination case.

¶20 Once the employee makes a prima facie case, the burden then shifts to the employer, who "must articulate a legitimate, nondiscriminatory reason for termination. The employer's burden at this stage is not one of persuasion, but rather a burden of production." *Grimwood*, 110 Wn.2d at 364. OSI met this burden with its statement that the reason for terminating Rice was his improper conduct at the fire scene.

¶21 Once the employer meets its burden, the presumption of discrimination raised by the prima facie case is rebutted. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The employee resisting summary judgment then must produce evidence that raises a genuine issue of material fact on whether the reasons given by the employer for discharging the employee are unworthy of belief or are mere pretext for what is in fact a discriminatory purpose. *Sellsted*, 69 Wn. App. at 859. The employee is not required to produce evidence beyond that offered to establish the prima facie case, nor introduce direct or "smoking gun" evidence. *Sellsted*, 69 Wn. App. at 860. Circumstantial, indirect, and inferential evidence will suffice to discharge the plaintiff's burden. *Sellsted*, 69 Wn. App. at 861. He must meet his burden of production to create an issue of fact but is not required to resolve that issue on summary judgment. "For these reasons, summary judgment in favor of employers is often inappropriate in employment discrimination cases." *Sellsted*, 69 Wn. App. at 861. The issue at this point is whether, notwithstanding OSI's statement of a nondiscriminatory reason for termination, Rice's evidence is sufficient to support a reasonable inference that a discriminatory or retaliatory motive was a substantial factor in his discharge. *See Mackay v. Acorn Custom Cabinetry, Inc.*, 127 Wn.2d 302, 310, 898 P.2d 284 (1995).

¶22 An employee can show that the employer's proffered reason is pretextual in several ways:

"(1) the company's reasons have no basis in fact; or (2) if they have a basis in fact, by showing that they were not really motivating factors; or (3) if they are factors, by showing they were jointly insufficient to motivate the adverse employment decision, [*e.g.*], the proffered reason was so removed in time that it was unlikely to be the cause or the proffered reason applied to other employee[s] with equal or greater force and the company made a different decision with respect to them."

*Sellsted*, 69 Wn. App. at 859 n.14 (alterations in original) (quoting *Grabb v. Bendix Corp.*, 666 F. Supp. 1223, 1244 (N.D. Ind. 1986)).

¶23 Generally, when an employee produces his or her prima facie case plus evidence of pretext, a trier of fact must determine the true reason for the action because the record contains reasonable but competing inferences of both discrimination and nondiscrimination. *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 150, 94 P.3d 930 (2004). The parties agree for summary judgment appeal purposes that Rice stated a prima facie age discrimination case and OSI proffered a legitimate, nondiscriminatory reason for termination. The central dispute here is whether Rice met his burden of producing sufficient evidence to support a reasonable inference that a discriminatory retaliatory motive was a substantial factor in his discharge—pretext.

¶24 In the face of OSI's evidence discussed above, Rice's evidence outlined above sufficiently creates a genuine issue of material fact on the reason for his discharge.[7] In addition, Rice's supervisor, Davis, routinely made age-re-

---

[7] OSI argues that "evidence of misconduct is considered from the *perception of the decision maker*, not the employee." Resp't's Br. at 12. OSI asserts that the record contains no facts undermining Davis's honest belief that Rice engaged in misconduct. Although it is true that "[i]t is not unlawful for an at-will employee to be discharged because he or she is perceived to have misbehaved . . . ," *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 190 n.14, 23 P.3d 440 (2001), the evidence viewed as a whole in Rice's favor raises an issue of fact regarding the real reason OSI fired him.

lated comments beginning in 2005 through 2007.[8] Davis fired Rice in December 2007 and immediately replaced him with a much younger, less experienced employee—Reed. Reed acknowledged he contacted Rice about the fire to find out what to do and to learn from Rice. *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125 (10th Cir. 1998) (In order to rely on age-related statements to establish pretext, plaintiff must show they were made by decision maker.).

¶25 And OSI offered inconsistent reasons for terminating Rice's employment, further suggesting that none of the reasons given was the real reason for his termination. *Renz v. Spokane Eye Clinic, PS*, 114 Wn. App. 611, 624, 60 P.3d 106 (2002) (Evidence indicating that the employer offered multiple, incompatible reasons or inconsistent reasons for the adverse action and rebutting the accuracy or believability of the employer's reasons is sufficient to create competing inferences.).

¶26 Rice also explains that contrary to OSI's claims, his actions during the fire were reasonable. Although an employee's mere denial of misconduct alone is insufficient to create a genuine issue of material fact, *Domingo*, 124 Wn. App. at 88-89, Rice's pretext evidence constitutes more than mere denial. For example, even though off duty, he felt compelled to oversee the fire scene because OSI neglected to have two senior managers remain on site, a violation of its own policies. Davis confirmed the existence of such a policy. Rice also described that his assertive but reasonable conduct under the circumstances was necessary to protect the company's property and employees. He denied attempting to cut the vessel's line but acknowledged calling a tug boat company to tow the FCA vessel if required by the quickly evolving situation.

---

[8] We note Davis's age-related comments constitute direct evidence of his alleged discriminatory intent. And as discussed in footnote 4, OSI submitted no sworn testimony from any eye witnesses with personal knowledge of Rice's conduct at the fire (except Reed). A rational jury could disbelieve Reed's testimony since he benefited the most from Rice's termination.

¶27 Rice also challenges OSI's stated termination reason that he was "[c]reating bad relations with OSI customers and local officials." The record contains no declaration or deposition testimony from any OSI customers that Rice's conduct harmed customer relations with OSI. Although Davis's testimony suggests FCA representative Pugh was displeased with Rice's conduct at the fire, the record contains no declaration or deposition testimony from Pugh. In contrast, OSI customer Andrew Murphy testified that Rice was always a helpful OSI employee. Davis testified OSI lost no accounts or business resulting from Rice's conduct at the fire scene. The record shows no contrary evidence on this point.

¶28 Rice also challenges OSI's statement that his conduct constituted "extremely poor treatment of employees that has been happening for many years . . . ." Rice acknowledged one written reprimand for alleged employee mistreatment, which he disputed at the time. He testified to getting along well with employees and frequently hosting social events at his home. He also testified that he frequently entertained OSI customers, and the record contains testimony from one customer who complimented his work. Davis testified he verbally warned and counseled Rice several times about mistreating employees and excessive drinking. Rice denies this. Davis also claims he wrote several reprimands to document his concerns. Rice's personnel file contains only one written reprimand, discussed above.[9]

¶29 We conclude the record contains reasonable but competing inferences of discriminatory intent because OSI's reasons are called into question by the inconsistent reasons given and evidence rebutting their accuracy and

---

[9] OSI improperly speculates that Rice removed other written reprimands from his own personnel file.

credibility. We reverse summary judgment in favor of OSI and remand for proceedings consistent with this opinion.

ELLINGTON and SCHINDLER, JJ., concur.

Review denied at 174 Wn.2d 1016 (2012).