IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>     Respondent,<br><br>  v.<br><br>RENE RAMIREZ-VASQUEZ,<br><br>     Appellant. | No. 77693-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: July 29, 2019 |

SMITH, J. — Rene Ramirez-Vasquez appeals his convictions of second degree child rape. He argues the court (1) erred by ruling statements he made to a police detective were admissible in violation of Miranda v. Arizona[1] and (2) abused its discretion by admitting into evidence his Facebook communications with the victim. Finding no error or abuse of discretion, we affirm.

## FACTS

K.L.[2] grew up being raised by her maternal grandmother in El Salvador.[3] Her immediate family—including her father, Rene Ramirez-Vasquez, mother, and two brothers—whom she did not know "very well," lived in the United States.

---

[1] 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).
[2] We use initials for the victim to protect her privacy.
[3] K.L. lived with her grandmother from age 1 to 11.

In August 2015, at age 11, K.L. reluctantly joined her family in Seattle.[4] Shortly thereafter, Ramirez-Vasquez began touching K.L.'s hair and telling her how he was attracted to her. His expressions of attraction to K.L. continued for "a long time" and escalated in June 2016 to the point that Ramirez-Vasquez told K.L. "that he wanted to make love to [her]." About a month after stating his sexual desires, Ramirez-Vasquez began having intercourse with K.L.[5]

In September 2016, some of K.L.'s relatives in El Salvador saw a Facebook Messenger[6] conversation on K.L.'s Facebook account in which Ramirez-Vasquez expressed his romantic attraction to her. Those relatives then relayed the information to some of K.L.'s Seattle-area relatives, who intervened and took K.L. to a Seattle police station to report the sexual abuse.

On September 19, 2016, Detective Juan Tovar, of the Seattle Police Department's Sexual Assault and Child Abuse Unit, was assigned to investigate the possible sexual assault of K.L. He called and invited K.L.'s parents to come to the Seattle Police Department headquarters for an interview, and they both voluntarily accepted.

---

[4] K.L. decided to come to the United States after her parents threatened to send "the police from here" to "go down there to" get her.

[5] K.L. was age 12 at the time.

[6] "Facebook Messenger is a mobile app that enables chat, voice and video communications between Facebook web-based messaging and smartphones." Facebook Messenger, WhatIs.com, https://whatis.techtarget.com/definition/Facebook-Messenger [https://perma.cc/3Q4S-RC48].

On September 21, 2016, Detective Tovar separately interviewed K.L.'s mother and Ramirez-Vasquez in a nonlocking interview room on the sixth floor.[7] Without providing any Miranda warnings, Detective Tovar interviewed Ramirez-Vasquez in Spanish for 45 minutes to an hour.[8] Detective Tovar arrested Ramirez-Vasquez at the conclusion of the interview.

On September 23, 2016, Detective Tovar visited Ramirez-Vasquez at the King County Correctional Facility and, after providing Miranda warnings, conducted a second interview. At this interview, Ramirez-Vasquez confirmed that he had a Facebook account and occasionally sent messages to K.L. on Facebook.

On September 26, 2016, the State charged Ramirez-Vasquez with two counts of rape of a child in the second degree.

Before trial, Ramirez-Vasquez moved to suppress statements he made to Detective Tovar during the first interview conducted at the police station and to exclude the Facebook messages between Ramirez-Vasquez and K.L. Initially the court ruled that the State had laid sufficient foundation for admission of the Facebook communications. The court then held a CrR 3.5 hearing and ruled that Ramirez-Vasquez's interview statements would be admissible at trial.[9]

At trial, the court admitted the Facebook messages over Ramirez-Vasquez's authentication objections. The State did not offer any statements from

---

[7] Prior to the interview, Detective Tovar did not handcuff Ramirez-Vasquez or place him under arrest.

[8] Detective Tovar is fluent in Spanish.

[9] Ramirez-Vasquez did not testify at the CrR 3.5 hearing.

Ramirez-Vasquez's first interview into evidence. K.L. testified that Ramirez-Vasquez had sex with her six or seven times. Ramirez-Vasquez did not testify. The jury found Ramirez-Vasquez guilty as charged. He appeals.

## ANALYSIS

### Statements to Detective at the Police Station

Ramirez-Vasquez contends the trial court erred by ruling pretrial that his statements to Detective Tovar were admissible in violation of Miranda.

*Standard of Review*

Under Miranda, the State may not use statements arising from the custodial interrogation of an accused unless that person is informed of his or her constitutional rights. Miranda, 384 U.S. at 444. Constitutional harmless error analysis applies to erroneously admitted statements obtained in violation of Miranda. State v. Nysta, 168 Wn. App. 30, 43, 275 P.3d 1162 (2012). "A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error." State v. Guloy, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985).

*Discussion*

Here, the State never offered any statements from Ramirez-Vasquez's September 21, 2016, interview at trial and the court never admitted any such

statements into evidence.[10]  Therefore, even assuming the court's pretrial ruling to admit these statements was error, we conclude that any error was harmless.

In his briefing, Ramirez-Vasquez claims "[b]ecause [his] statement and admissions during this interview were used extensively, and repeatedly, at trial and in closing argument, this error by the court was not harmless error and deprived [him] of his constitutional right to a fair trial." This claim is unpersuasive. First, he fails to cite to the record to support his claim.[11]  Second, he did not file a reply brief to contest the State's assertion that the statements were never offered or admitted.  Finally, our independent review of the record shows that the statements were not admitted at trial.

Lastly, Ramirez-Vasquez argues that "all statements made at the second interview should be suppressed as being related to, and the fruit of, the earlier interview where no <u>Miranda</u> warnings were provided." This argument, too, fails.

First, at the CrR 3.5 hearing, Ramirez-Vasquez did not argue "that the second interview is inadmissible on <u>Miranda</u> grounds . . . . [b]ecause clearly [the detective] did read him his <u>Miranda</u> rights." Second, he failed to assign error to the court's admission of statements from the second interview and likewise failed to support his argument with legal authority or meaningful analysis.  <u>See</u> RAP

---

[10] The State did not seek to admit the DVD (digital video disk) recording or the translated transcript of the September 21, 2016, interview as exhibits at trial. Nor did the State elicit testimony from Detective Tovar regarding the substance of the first interview.

[11] Though Ramirez-Vasquez points to Detective Tovar's testimony noting that he admitted communicating with his daughter using Facebook, the Facebook statement came from the second (September 23, 2016) interview in which he waived his <u>Miranda</u> rights.  He did not make any statements concerning Facebook in his first interview.

10.3(a)(6) (requires parties to provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record"); Saunders v. Lloyd's of London, 113 Wn.2d 330, 345, 779 P.2d 249 (1989) (declining to consider party's argument that lacked "adequate, cogent argument and briefing").

Accordingly, we conclude that the court did not err in admitting statements from Ramirez-Vasquez's second interview.

### Admission of Facebook Evidence

Ramirez-Vasquez contends the trial court abused its discretion by admitting a Facebook conversation he had with K.L., "Exhibit 3."[12] He argues the State did not lay an adequate foundation for or properly authenticate exhibit 3.

### Standard of Review

We review a trial court's decision to admit evidence for an abuse of discretion.[13] State v. Garcia, 179 Wn.2d 828, 846, 318 P.3d 266 (2014). "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." ER 901(a).

The requirement under ER 901(a) is met "if the proponent shows enough proof for a reasonable fact finder to find in favor of authenticity." State v. Payne, 117 Wn. App. 99, 108, 69 P.3d 889 (2003) (citing State v. Danielson, 37 Wn.

---

[12] Exhibit 3 contains screenshots of the Facebook communications between Ramirez-Vasquez and K.L. from September 11 to September 16, 2016.

[13] An abuse of discretion occurs when a trial court's decision is manifestly unreasonable or based on untenable grounds or reasons. Garcia, 179 Wn.2d at 846.

App. 469, 471, 681 P.2d 260 (1984)). The proponent "'need not rule out all possibilities inconsistent with authenticity or conclusively prove that evidence is what it purports to be.'" State v. Andrews, 172 Wn. App. 703, 708, 293 P.3d 1203 (2013) (quoting State v. Thompson, 2010 ND 10, 777 N.W.2d 617, 624).

"Because under ER 104 authenticity is a preliminary determination, the court may consider evidence that might otherwise be objectionable under other rules." Rice v. Offshore Sys., Inc., 167 Wn. App. 77, 86, 272 P.3d 865 (2012). "A trial court may, therefore, rely upon such information as lay opinions, hearsay, or the proffered evidence itself in making its determination." State v. Williams, 136 Wn. App. 486, 500, 150 P.3d 111 (2007). "Such information must be reliable but need not be admissible." Williams, 136 Wn. App. at 500.

The Rules of Evidence (ER) provide a number of illustrative examples that demonstrate methods that meet the requirements of authentication, including:

(1) Testimony of Witness with Knowledge. Testimony that a matter is what it is claimed to be.
. . . .
(4) Distinctive Characteristics and the Like. Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.
. . . .
(10) Electronic Mail (E-mail). Testimony by a person with knowledge that (i) the e-mail purports to be authored or created by the particular sender or the sender's agent; (ii) the e-mail purports to be sent from an e-mail address associated with the particular sender or the sender's agent; and (iii) the appearance, contents, substance, internal patterns, or other distinctive characteristics of the e-mail, taken in conjunction with the circumstances, are sufficient to support a finding that the e-mail in question is what the proponent claims.

ER 901(b).[14]

In making its preliminary determination, the trial court "considers only the evidence offered by the proponent and disregards any contrary evidence offered by the opponent." Rice, 167 Wn. App. at 86. "Once a prima facie showing has been made, the evidence is admissible under ER 901," Rice, 167 Wn. App. at 86, but "[t]he opponent is then free to object on the basis of any other rules that may bar the evidence or offer contradictory evidence challenging authenticity. If such contradictory evidence is offered, the authenticity of the proponent's evidence is ultimately judged by the trier of fact." In re Det. of H.N., 188 Wn. App. 744, 752, 355 P.3d 294 (2015) (footnote omitted).

*Discussion*

Pointing to K.L.'s denial of participating in the Facebook conversation depicted in exhibit 3 and to his objections to the authenticity of exhibit 3, Ramirez-Vasquez contends that there was no foundation laid to support admitting the Facebook messages into evidence. We disagree.

During the pretrial hearing on Ramirez-Vasquez's motion to exclude the Facebook communications, the State presented uncontroverted evidence that the screenshots in exhibit 3 had been taken from K.L.'s Facebook account and that they depicted communications from Ramirez-Vasquez's Facebook account.[15] The "contents, substance, internal patterns, or other distinctive

---

[14] While the current version of ER 901(b) does not specifically address Facebook messages or other forms of social media communication, it provides adequate ground for the trial court's determination in this case.

[15] Ramirez-Vasquez's counsel acknowledged that the screenshots "appear[ed] to be" taken from K.L.'s Facebook account.

characteristics of" exhibit 3 contained Ramirez-Vasquez's name and picture associated with the messages purportedly authored by him. The evidence established that Ramirez-Vasquez historically used Facebook as a mechanism to communicate with K.L. There was no evidence suggesting that the communications contained in exhibit 3 came from some other person or that Ramirez-Vasquez's Facebook account had been hacked.[16]

The distinctive characteristics of the Facebook communications in exhibit 3, combined with the absence of any evidence fabrication of Ramirez-Vasquez's Facebook account, support the conclusion that the State adequately established authentication. The trial court did not abuse its discretion by ruling pretrial that exhibit 3 was admissible.

At trial, Ramirez-Vasquez again objected to the court's admission of exhibit 3 on authenticity grounds. He argued that the witness through whom the State was attempting to admit exhibit 3 could not authenticate the Facebook communications. The State countered that the witness would testify about accessing and observing K.L.'s Facebook account. The court overruled the objection and ruled that there were enough indicia of reliability to admit the Facebook communications into evidence. The witness then testified without any additional objections on foundation. Detective Tovar next testified, without

---

[16] Regarding K.L.'s denial that she sent Ramirez-Vasquez the messages contained in exhibit 3, the State argued that that fact does not necessarily mean Ramirez-Vasquez's statements are any less authentic or attributable to him. The State explained that it anticipated the testimony would establish that Ramirez-Vasquez repeatedly "mess[ed] around" with K.L.'s phone and that "it was him creating these [Facebook] conversations back and forth . . . almost [as] a guise to say that she was enjoying what was happening or something to that effect."

objection, about seeing the Facebook communications in exhibit 3. Lastly, when presented with exhibit 3, K.L. recognized it has her and Ramirez-Vasquez's Facebook accounts.[17]

The court did not abuse its discretion in admitting the Facebook conversation in exhibit 3.

We affirm.

WE CONCUR:

_____

_____

_____

---

[17] The court overruled Ramirez-Vasquez's foundation objection to K.L.'s recognition of exhibit 3. K.L. later testified, however, that she did not recognize the messages contained within exhibit 3.