IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MARCUS JAMES AND MI ZHOU, A MARRIED COUPLE, | No. 86017-8-I |
| Appellants, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| KING COUNTY, a governmental entity doing business as EVERGREEN HEALTH, a governmental entity; King County Hospital Dist. No. 2; EVERGREEN HEALTH MEDICAL GROUP, LLC., CARA COOK; AND JOHN DOE DEFENDANT | |
| Respondents, | |
| DR. MARK FREEBORN, | |
| Defendant. | |

Díaz, J. — The superior court granted summary judgment in favor of King County Public Hospital District No. 2 d/b/a EvergreenHealth and Cara Cook (together, EvergreenHealth), and dismissed the medical negligence claims of Marcus James and Mi Zhou (together, appellants).[1] The court determined that the appellants' medical expert, ARNP Karen Huisinga, was unqualified to testify on

---

[1] Appellants voluntarily dismissed their claims against Dr. Mark Freeborn prior to the court's summary judgment order.

causation. The court next decided that even if she was so qualified, her testimony on causation was substantively insufficient to survive summary judgment. We hold both decisions were incorrect, reverse the order of summary judgment, and remand for further proceedings.

I.      BACKGROUND

As this is an appeal from summary judgment, we view and present the "facts and reasonable inferences in the light most favorable to the nonmoving party," here, appellants. TracFone, Inc. v. City of Renton, 30 Wn. App. 2d 870, 875, 547 P.3d 902 (2024).

On December 4, 2019, Dr. Freeborn performed spinal surgery on James. On December 23, 2019, James attended a follow-up appointment with Cook, an advanced registered nurse practitioner (ARNP) at EvergreenHealth. On January 1, 2020, James reported to Swedish Medical Center (Swedish) and was treated for an infection. Five days later, Swedish discharged James in stable condition.

On February 10, 2023, appellants sued EvergreenHealth in superior court, bringing inter alia a claim of medical negligence and alleging Cook failed to render appropriate care, specifically, by failing to properly investigate and treat James' infection.

In October 2023, the court granted EvergreenHealth's motion for summary judgment and dismissed the appellants' claims. EvergreenHealth had provided the declaration of Dr. Joel Hoekema in support of their motion. The court held appellants' responsive putative expert, ARNP Karen Huisinga, failed to establish she was qualified to testify on causation and otherwise provided insufficient

2

testimony on causation.  Appellants timely appeal.

## II.  ANALYSIS

Persons may seek "damages for injury occurring as the result of health care" if they establish inter alia that their "injury resulted from the failure of a health care provider to follow the accepted standard of care."  RCW 7.70.030.  For such a claim, a plaintiff must establish the "provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider" in like circumstances and "[s]uch failure was a proximate cause of the injury complained of."  RCW 7.70.040(1)(a), (b).  Generally, both the standard of care and causation must be established by medical expert testimony.  Frausto v. Yakima HMA, LLC, 188 Wn.2d 227, 231-32, 393 P.3d 776 (2017).

"Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  West v. Dep't of Fish & Wildlife, 21 Wn. App. 2d 435, 440, 506 P.3d 722 (2022); CR 56(c).  "A 'material fact' is one on which the outcome of the litigation depends."  TracFone, 30 Wn. App. 2d at 875 (quoting Jacobsen v. State, 89 Wn.2d 104, 108, 569 P.2d 1152 (1977)).  "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation."  Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).

Stated procedurally, "summary judgment gauges whether the nonmoving party met their 'burden of production to create an issue' of material fact."  TracFone, 30 Wn. App. 2d at 875 (quoting Rice v. Offshore Sys., Inc., 167 Wn. App. 77, 89, 272 P.3d 865 (2012)).  We review summary judgment orders de novo,

while "view[ing] all facts and reasonable inferences in the light most favorable to the nonmoving party." Id.

A.  ARNP Huisinga's Qualifications on Causation

The court found that "ARNP Huisinga is qualified to opine on the standard of care applicable to Cara Cook,"[2] but appellants "fail[ed] to establish she is qualified to render an opinion about causation, specifically that Cook's alleged failure to detect an infection was a proximate cause of [appellants'] damages."

A "witness [who is] qualified as an expert by knowledge, skill, experience, training, or education, may testify" if their "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." ER 702. "Although appellate courts generally review a decision to exclude expert witness testimony at trial under an abuse of discretion standard . . . the de novo standard of review applies when reviewing trial court evidentiary rulings made in conjunction with a summary judgment motion." Watness v. City of Seattle, 16 Wn. App. 2d 297, 304-305, 481 P.3d 570 (2021) (examining the exclusion of expert criminologist testimony under ER 702 in relation to a negligence claim dismissed on summary judgment). Here, the court ruled on ARNP Huisinga's qualifications within the same order, and thus in conjunction with, granting summary judgment. Thus, we review the court's determinations on ARNP Huisinga's qualifications de novo.

EvergreenHealth is correct that our Supreme Court in Frausto did not hold ARNPs are *always* qualified, simply by virtue of their degree or general training, to

_____

[2] Respondents do not challenge the court's finding that ARNP Huisinga was qualified to "opine on the standard of care."

testify in medical negligence cases. Rather, it held that "knowledge to qualify as an expert on causation is a determination left to the trial court under our Rules of Evidence, *taking into consideration the ARNP's particular scope of practice and expertise*." Frausto, 188 Wn.2d at 243 (emphasis added).

It does not follow, however, that because ANRP Huisinga is not "an orthopedic provider," "an infectious disease specialist," or "a pathologist," she is not qualified to provide an opinion in this particular case, as EvergreenHealth asserts. To the extent the trial court so held, it erred.

A "physician with a medical degree is qualified to express an opinion on any sort of medical question, including questions in areas in which the physician is not a specialist, *so long as the physician has sufficient expertise to demonstrate familiarity with the procedure or medical problem at issue*." Hill v. Sacred Heart Med. Ctr., 143 Wn. App. 438, 447, 177 P.3d 1152 (2008) (emphasis added); see also e.g. Leaverton v. Cascade Surgical partners, PLLC, 160 Wn. App. 512, 519, 248 P.3d 136 (2011) (noting this court has "allowed an orthopedic surgeon to testify about the standard of care for a doctor of podiatric medicine because the surgeon and podiatrist used the same methods of treatment.").

Similarly, for nonphysicians, "[t]here is no general rule that prohibits a specialist from testifying regarding the standard of care applicable to a general practitioner or a specialist in one area from testifying about another area." Morton v. McFall, 128 Wn. App. 245, 253, 115 P.3d 1023 (2005). "It is the *scope of a witness's knowledge* and not artificial classification by professional title that governs the threshold question of admissibility of expert medical testimony in a

malpractice case." Eng v. Klein, 127 Wn. App. 171, 172, 110 P.3d 844 (2005) (emphasis added).

Thus, appellants did not need to establish ARNP Huisinga had specialized training or experience in all of the various potentially relevant disciplines EvergreenHealth enumerates. Rather, they needed only to establish her "familiarity with the procedure or medical problem at issue," Hill, 143 Wn. App. at 447, namely, the "scope of [her] knowledge" of routine post-operative care. Eng, 127 Wn. App. at 172. "Any differences in training" between experts—such as between Dr. Hoekema and ARNP Huisinga—"would go to the weight the jury should give to their testimony." Leaverton, 160 Wn. App. at 520.

Further, EvergreenHealth's assertion that ARNP Huisinga "disclosed *no* experience that would otherwise qualify her" is contrary to the record. (Emphasis added). To the extent the trial court so held, it erred.

ARNP Huisinga became an RN in 1984 and an ARNP in 1993, representing decades of experience, not unlike the nurse in Hill. 143 Wn. App. at 447. And, ARNP Huisinga lists both a "Medical-Surgical Nurse Certification" from the American Nurses Association and at least nine years of nursing and supervisory roles in varied surgical settings among other experience. The "particular scope of practice and expertise" ARNP Huisinga possessed, thus, included surgical roles and experience with procedures and precautions for post-surgical complications. Frausto, 188 Wn.2d at 243. It constitutes a ruling based on untenable grounds to hold otherwise. Lakey, 176 Wn.2d at 919.

EvergreenHealth acknowledges ARNP Huisinga's surgical experience in a

footnote, but nonetheless argues that this experience was "*before* she was licensed to independently diagnose medical conditions as an ARNP." Even if it is true that Washington "courts have never held that experience as an RN qualifies a witness to provide medical causation testimony," EvergreenHealth cites to no authority supporting the proposition that an expert cannot draw, in part, from their past experience as an RN to establish their qualifications at the time of summary judgment. DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

We thus hold the court erroneously determined the appellants failed to establish ARNP Huisinga was qualified to testify on causation.

B.     Sufficiency of ARNP Huisinga's Testimony on Causation

The court next held that "[e]ven if ARNP Huisinga is *qualified* . . . she does not provide an opinion about the particular mechanism of injury" and "[h]er opinion is conclusory and fails to describe with sufficient particularity exactly *how* Cook's alleged failure to detect an infection proximately caused Plaintiffs' damages." The court concluded that the "jury would be left to speculate on the mechanism of the injury."

For its part, EvergreenHealth asserts that ARNP Huisinga's "claim that Mr. James would have had a 'better outcome[,]' or that some unidentified injury would have been avoided with earlier diagnosis is insufficient to create an issue of fact for trial." EvergreenHealth insists Huisinga "must explain, *factually and*

*mechanically*, how the incident occurred to inform the court how the alleged negligence proximately caused the injury."[3]

It is true that, to be helpful to a jury, a medical expert's "testimony must be based on the facts of the case and not speculation" and "be based on a reasonable degree of medical certainty." Hill, 143 Wn. App. at 448; CR 56(e) (requiring the nonmoving party's affidavit "set forth specific facts"); ER 702. "Unreliable testimony does not assist the trier of fact." Lakey, 176 Wn.2d at 918. "It is the proper function of the trial court to scrutinize the expert's underlying information and determine whether it is sufficient to form an opinion on the relevant issue." Johnston-Forbes v. Matsunaga, 181 Wn.2d 346, 357, 333 P.3d 388 (2014).

"Proximate cause has two elements:[4] (1) cause in fact and (2) legal causation."[5] Hill, 143 Wn. App. at 448. Here, EvergreenHealth appears to focus

---

[3] Notably the court did not hold, nor does EvergreenHealth appear to contest, that ARNP Huisinga provided insufficient testimony on the standard of care or breach. Instead, both focus squarely on causation. Perhaps this is so because ARNP Huisinga explained "the standard of care for post-operative follow up appointments [is] to evaluate for any possible complications," including "infection." As to breach, she declared ARNP Cook did not "evaluate the patient's vital signs," "take a detailed history of the presenting symptoms," including a "fever history," "initiate a workup" to "take[] a sample" from the seroma for testing, or "inform[] the surgeon of these complications" among other methods. We do not reach whether these statements create an issue of fact as to the duty EvergreenHealth had and whether it breached that duty.

[4] A judge of this court has opined that cause in fact and legal causation are separate and distinct elements of a negligence claim rather than elements of proximate cause. Zorchenko v. City of Federal Way, 31 Wn. App. 2d 390, 401-04, 549 P.3d 743 (2024) (Feldman, J. concurring).

[5] "To establish the cause in fact, the plaintiff must show that he or she would not have been injured *but for* the health care provider's failure to use reasonable care." Hill, 143 Wn. App. at 448. "Legal causation 'is grounded in policy determinations as to how far the consequences of a defendant's acts should extend" and gauges whether "a defendant's breach of duty is too remote or insubstantial to trigger liability as a matter of legal cause." Lowman v. Wilbur, 178 Wn.2d 165, 169, 309 P.3d 387 (2013) (quoting Crowe v. Gaston, 134 Wn.2d 509, 518, 951 P.2d 1118 (1998)).

on cause in fact, "in which [appellants] must show that [James] would not have been injured but for the health care provider's failure to use reasonable care." Id. At its most specific, EvergreenHealth first avers that ARNP "Huisinga does not explain what symptoms worsened, in what respect, and why the alleged delay caused such worsening from any physiological or mechanical perspective . . . and on what time-course." We disagree.

ARNP Huisinga's testimony first walked through the development of James' symptoms step-by-step based on her review of his medical record. She explained James "presented with several symptoms that are consistent with post-operative complications," such as "infection," "nausea, vomiting, decreased appetite starting two days after surgery." Further, these symptoms were "still present" at his appointment with ARNP Cook on December 23, 2019, "18 days following the surgery," where he now also had "a golf-ball size seroma present in his back surgical incision."

ARNP Huisinga continued, stating that "James['] symptoms worsened over the days following December 23, 2019" and, "on January 1, 2020, Mr. James presented to Swedish Hospital with worsening symptoms" and that it was "determined that he did have an infection in the operative area" and "that the infection had spread to the spine and muscles" nearby.

Importantly, ARNP Huisinga then declared that, "[i]n [her] opinion, this infection was present on December 23, 2019." In turn, she swore that "[b]ecause [ARNP] Cook did not rule out an infection, and because she took no measures to investigate or treat the postoperative infection, Mr. James['] symptoms" as well as

9

"his infection had grown worse since [ARNP] Cook saw him." Thus, "James' diagnosis was delayed leading to an evolving, expanding infection leading to a large abscess and osteomyelitis in the area," among other conditions to be discussed below.

In short, ARNP Huisinga's declaration connects James' post-surgery symptoms, ARNP Cook's (alleged lack of) treatment, and James' subsequent injury together. On this "adequate foundation," Johnston-Forbes, 181 Wn.2d at 357, and viewing ARNP Huisinga's testimony in a light most favorable to the appellants as we must, TracFone, 30 Wn. App. 2d at 875, a juror could reasonably infer "a direct sequence" of events between the lack of treatment and James' injury which "is unbroken by any new independent cause." Hill, 143 Wn. App. at 448-50 ("This, for us, is an ample showing that the failure to diagnose HIT is what caused the injury to Mr. Hill.").

Still, EvergreenHealth argues ARNP Huisinga "does not identify the additional damages suffered or explain how the few-day delay caused it" or otherwise "fails to explain what 'complications or problems' she is referring to, or how earlier diagnosis and treatment could have lessened or avoided them." They further allege her declaration fails "to include any corollary evidence to establish that such worsening actually occurred." These assertions are also contrary to the record.

As to the damages and complications, ARNP Huisinga explained "James' infected area of his back, in the area of the surgery, was aspirated, and [he] was shown to have an infection that had been allowed to fester since shortly after the

surgery." As to the corollary evidence, she explained this damage is demonstrated in a January 1, 2020 MRI where "there was a large lobular fluid collection . . . along the surgical tract and continuing into musculature worrisome for abscess, osteomyelitis and myositis." Further, ARNP Huisinga declared that subsequent MRIs "also demonstrated the infectious fluid collection along with affected soft tissues were moderately to severely narrowing the right neural foramen," as well as "*scarring* in the area of the infection." (Emphasis added).

And, as to the timing of the delay, ARNP Huisinga then stated that it was her "opinion that the scarring was made worse by the failure to properly treat Mr. James on December 23, 2019, and had [ARNP] Cook appropriately and properly treated Mr. James" he "more likely than not," and under a "reasonable degree of medical probability," would "have had a better outcome" as to each of these metrics. Rounds v. Nellcor Puritan Bennett, Inc., 147 Wn. App. 155, 163, 194 P.3d 274 (2008) (noting expert medical testimony "'must be sufficient to establish that the injury-producing situation probably or more likely than not caused the subsequent condition'") (quoting Merriman v. Toothaker, 9 Wn. App. 810, 814, 515 P.2d 509 (1973)). She concludes that, "[w]ith infections the longer they are allowed to evolve the more complex and severe the infection can become which is evident *on the 01/01/2020 MRI just seven days after his follow-up with [ARNP] Cook.*" (Emphasis added).

In other words, ARNP Huisinga's testimony connects James' worsening health observed and documented at Swedish to ARNP Cook's treatment, where each passing day increases harm, complications, and permanent injury.

11

Moreover, she directly and repeatedly tied her testimony on these conditions to "the facts of the case," such as the MRIs and James' relevant medical records and history. Hill, 143 Wn. App. at 448. A reasonable juror could infer that ARNP Cook's failure to utilize the earlier discussed methods to identify the infection "produce[d] the injury complained of and without which such injury would not have happened." Id.; see also id. at 451 ("We conclude that there is a sufficient showing of a relationship between the breaches of care alleged by the Hills and the resulting injury to avoid summary dismissal of the Hills' complaint against Sacred Heart.").

Contrary to EvergreenHealth's reliance, this matter is distinguishable from Guile v. Ballard Community Hosp., where the expert merely opined the surgeon used "'faulty technique'" and thus "failed to identify specific facts supporting his conclusion." 70 Wn. App. 18, 26, 851 P.2d 689 (1993); see also Reyes v. Yakima Health Dist., 191 Wn.2d 79, 86, 88-89, 419 P.3d 819 (2018) (noting the matter was a "close call" but that the expert's allusions to needing "'[a]n alternate drug'" or mere "'observation'" were insufficient).

Rather, this matter is remarkably similar to Keck v. Collins, where our Supreme Court reversed an order of summary judgment, where the plaintiff alleged a failure to treat her complication and infection and where a defendant claimed, as here, the plaintiff's expert, Dr. Li, "failed to identify the specific 'problems' Keck had experienced."[6] 184 Wn.2d 358, 371, 372 n.9, 357 P.3d 1080 (2015). The court held it was sufficient that the expert "refer[red] to Keck's developing infection" in

---

[6] Specifically, Dr. Li declared that the "'surgeons performed multiple operations without really addressing the problem of non-union and infection'" and sent "'Ms. Keck to a general dentist as opposed to an oral surgeon or even a plastic surgeon or an Ear, Nose and Throat doctor.'" Keck, 184 Wn.2d at 371.

relation to treatment and did not "need [to] detail all of her alleged injuries." Id. at 372 n.9. Moreover, distinguishing Guile, the Court further held that "Dr. Li stated . . . a reasonable doctor would have actually treated Keck's developing infection . . . or made an appropriate referral to another doctor for treatment, but here, the Doctors did neither." Id. at 373. Finally, the Court held that "i[n] contrast to the expert in Guile, Dr. Li connected his opinions about the standard of care and causation to a factual basis: the medical records." Id. Each of these points is reflected above.

In short, we hold ARNP Huisinga's expert testimony was not conclusory or speculative and, viewing the above assertions in a light most favorable to the appellants, hold it was sufficient to create a genuine issue as to causation rendering summary judgment inappropriate. West, 21 Wn. App. 2d at 440; Keck, 184 Wn.2d at 374 ("Because the testimony could sustain a verdict for the nonmoving party, it was sufficient").

## III.    CONCLUSION

We reverse the court's summary judgment order and remand for further proceedings consistent with this opinion.

Díaz, J.

WE CONCUR:

Feldman, J.

Birk, J.

13